MEMORANDUM & ORDER
 

 GARAUFIS, District Judge.
 

 The instant action is a bankruptcy appeal from the March 8, 2001 Order Granting Applications for Allowance of Final Commissions, Compensation and Reimbursement of Expenses (the “Fee Order”) entered by Judge Carla E. Craig of the Bankruptcy Court for the Eastern District of New York. Appellant, Scott Frostbaum (“Frostbaum”), was one of several credi
 
 *472
 
 tors in the underlying bankruptcy case. Appellee, Martin P. Ochs was the Trustee (“Trustee”) of the bankrupt estate. Frostbaum seeks relief on appeal in the form of an order from this court which would compel the Trustee to recover further monies from the debtor to fully compensate Frostbaum on his allowed unsecured subordinated claim pursuant to a March 11, 1999 Stipulation Agreement entered into between Frostbaum and the Trustee, and approved by the Bankruptcy Court. For the reasons discussed below, the appealed is dismissed.
 

 I. Background
 

 Jeanette Samuel (“Debtor”) filed a voluntary Chapter 7 Bankruptcy Petition in 1995. The Trustee initially determined that the Debtor had no assets and a discharge was granted by the Bankruptcy Court on August 6, 1996. The Debtor’s case was closed as a “no-asset” case and the Trustee was discharged of his duties. Subsequently, Frostbaum provided information to the Trustee which revealed that the Debtor in fact had unreported assets. On joint motion by the Trustee and the United States Trustee, the case was reopened and the Trustee was reappointed as the Chapter 7 Trustee.
 

 Adversary Proceedings were initiated against the Debtor. Ultimately, however, the Trustee was able to settle these adversary proceeding by entering into a stipulation with the Debtor (the “Debtor Stipulation”). The Debtor agreed to a permanent order denying a discharge of her debts and further agreed to provide the Trustee with payments sufficient to cover all administration claims of the Debtor’s estate, plus payment in full, including interest, of all allowed claims against the Debtor’s estate.
 

 Another stipulation was entered into between the Trustee and Frostbaum to resolve Frostbaum’s general unsecured claim filed on October 20, 1997 and designated as claim number “3” against the Debtor’s estate. (Stipulation and Order Reclassifying and Reducing Claim Number 3 (the “Frostbaum Stipulation”), Dated February 11, 1999, So Ordered March 11, 1999.) Frostbaum was represented by counsel when this stipulation was entered. The Frostbaum Stipulation indicated that the Trustee had reviewed Frostbaum’s Claim and did not find it properly chargeable against the Debtor’s estate, but rather found that it was a claim against the Debt- or’s husband. It also indicated that Frostbaum maintained that his Claim was proper and was a valid general unsecured claim against the Debtor’s estate. Accordingly, in the interest of resolving the Claim and dispute “without the cost, expense and delay of further litigation” the parties agreed that Frostbaum’s Claim would be “reduced and reclassified as follows: (i) $6,500.00 of the Claim shall be allowed as a general unsecured claim pursuant; (ii) $10,000 of the Claim shall be allowed as an unsecured claim subordinate to all other claims allowed against the Debtor’s estate; and (iii) the balance of the Claim, in the amount of $23,179.20 shall be expunged.” (Frostbaum Stipulation ¶ 1.)
 

 By November 2000, the Trustee filed his Final Report and Accounting. The Trustee proposed that the general unsecured creditors would receive a distribution which would enable them to recover 96.4% of their allowed claims, after the payment of the Chapter 7 administration expenses. The Trustee, however, would not have sufficient funds to make a distribution to Frostbaum on his subordinated ■ general unsecured claim. A final hearing and meeting of creditors was held on March 8, 2001. Prior to the meeting, Frostbaum informed the Bankruptcy Court, by letter to Judge Craig, that he would not be able to attend. In the letter, he argued why he
 
 *473
 
 believed he was entitled to a 100% recovery on both of his unsecured claims, whether subordinated or not, and that the Trustee had an obligation to recover further monies from the Debtor. He concluded by asking Judge Craig to “enforce my Stipulation to the letter of the law.” (Brief for Appellant Frostbaum, Ex. 1, Letter dated March 4, 2001.) Frostbaum, who was still represented by counsel at that time, did not request a postponement of the final hearing or submit any formal motions or petitions.
 

 A hearing was held on March 8, 2001, to consider the Trustee’s Final Report. At this hearing the issue of Frostbaum’s subordinated claim was discussed.
 
 [1]
 
 Although neither Frostbaum nor his attorney appeared at this hearing, Judge Craig raised Mr. Frostbaum’s objections to the proposed final distribution. In response, the Trustee testified that the Debtor “is insolvent. She has no money to pay it. My attempts to get money from her went without success. We initially got $41,500 from her.... That was done on notice with Mr. Frostbaum’s notice.... Mr. Frostbaum had a claim, however, that was questionable at best. We went through many negotiations back and forth with his counsel, Charles Wertman, with whom I spoke with just within the last two weeks. He told me had no opposition to what was happening here.” (Tr. of March 8, 2001 Bankruptcy Court Hearing at 3-4.) Specifically, the Trustee stated that in his business judgment it was not worth pursuing the claim for the remaining $10,000.
 
 (Id.
 
 at 5.)
 

 The Judge then asked the Trustee to put on the record the reasons why he believed it was not, in his business judgment, worth pursuing additional monies that he was entitled to collect under the Debtor Stipulation.
 
 (Id.
 
 at 6.) The Trustee explained, at length, the history of the case and his efforts to settle the adversary proceedings and collect money from the Debtor. Also, he stated he had constant contact with the Debtor’s attorney, the Debtor was in ill health, and the reality of the situation was that, “the judgment is uncollectible at this point against [the Debtor]. There is nothing else I could do with respect to going after her. So I’m left with the point either that I close this case or leave it open for, you know, infinity....”
 
 (Id.
 
 at 7-13, 13.) Notably, the Trustee pointed out that the Debtor had not obtained a discharge of her debts, therefore Frostbaum still had the right to pursue, on his own, the $10,000 allowed claim against the Debtor.
 
 (Id.
 
 at 10.) Further, because Frostbaum had agreed that his claim would be subordinated, the Trustee decided that it was in the best interest to close this case while he was
 
 *474
 
 able to pay nearly 100% on all the non-subordinated general unsecured claims, rather than dragging out the resolution of the case for an uncollectible debt.
 
 (Id.
 
 at 13-14.)
 

 After hearing this testimony, Judge Craig stated “in summary, in your business judgment it is not economically prudent to pursue collection efforts against Jeanette Samuel and for that reason you’re not planning on doing so.”
 
 (Id.
 
 at 15.) The Trustee confirmed that “No business purpose would be served,” and Judge Craig concluded the proceedings by finding that “[biased [upon] the record that [the Trustee] made here today and based upon the evidence submitted in support of [the] application, I’m going to grant the application.”
 
 (Id.
 
 at 15-17.)
 

 II. Discussion
 

 A. Standard of Review
 

 “Title 28 U.S.C. § 158(a) gives district courts jurisdiction to hear- appeals from final orders of the bankruptcy courts.”
 
 Pegasus Agency, Inc. v. Grammatikakis,
 
 101 F.3d 882, 885 (2d Cir.1996). On an appeal from a final decision of a bankruptcy court, “[t]he district court ... may affirm, modify, or reverse a bankruptcy judge’s judgment, order, or decree.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.” Fed. R. BaNKR.P. 8013. The Second Circuit has restated this rule to require that “[t]he fact findings of the bankruptcy court are reviewed by the district court for clear error, and the conclusions of law are reviewed de novo.”
 
 In re Bonnanzio,
 
 91 F.3d 296, 300 (2d Cir.1996).
 

 B. The Merits of Appellant’s Claim
 

 Appellant frames his appeal as a “Petition” seeking to “Compel the Trustee to Enforce the Court Approved Stipulations, and to Recover Scott Frostbaum’s Claims from the Debtor Pursuant to Said Court Approved Stipulations.” (Brief for Appellant Scott Frostbaum.) As the Ap-pellee Trustee correctly points out, however, this court acts as a court of appeals to the Bankruptcy Court. Therefore, to the extent Appellant is not actually seeking review of an order or judgment of the Bankruptcy Court, but is asking this court to affirmatively enforce a stipulation or settlement, this court has no power to do so.
 
 See
 
 Fed. R. BankR.P. 8013 (District court has power to affirm, modify, reverse a bankruptcy judge’s order, or to remand for further proceedings).
 

 This court, however, does have a duty to construe
 
 pro se
 
 plaintiffs’ pleadings liberally, and Frostbaum has argued in his Reply Brief that he is in fact appealing from the Fee Order of March 8, 2001. (Reply for Appellant Scott Frostbaum at 8-9.) Construing Frostbaum’s argument as liberally as possible, and so as to present an appropriate issue for appeal, I take it that he is arguing that the Bankruptcy Court’s approval of the Trustee’s Final Report and Accounting, and fee application, must be reversed for clear error because the Trustee failed to pursue monies from the Debtor sufficient to satisfy 100% of Frostbaum’s stipulated claims.
 

 Frostbaum does not dispute that he has in fact received over 96% of his general unsecured claim for $6,500 and that the general unsecured claim for $10,000 was made subordinate to all other claims allowed against the Debtor’s estate. Contractual subordination of an allowed claim, such as the stipulation at issue here, is allowed, and enforceable under the Bankruptcy Code.
 
 See
 
 11 U.S.C. § 510(a);
 
 see
 
 
 *475
 

 also
 
 9E Am.Jur.2d
 
 Bankruptcy
 
 § 3112 (2000). One result of subordination, however, is that “one creditor’s claim is to be satisfied in full before distribution to the subordinated creditor, in contrast to the general requirement that claims of equal priority share pro rata in distribution.” 9E Am.JuR.2d
 
 Bank'ruptcy
 
 § 3112. Thus, although Frostbaum argues that he has been treated unfairly and differently from other creditors, because he did not receive a full 100% on both claims, the facts of this record demonstrate that Frostbaum agreed, with respect to his claim for $10,000, that he would not be entitled to equal priority in the distribution of funds.
 

 Despite the subordination of Frostb-aum’s claim, he argues that it was clear error for the Bankruptcy Judge to discharge the Trustee without requiring further attempts to collect funds which could pay the subordinated claim in full. The simple reality of bankruptcy cases is that many legally enforceable claims often remain less than fully satisfied, or not satisfied at all. While Fed. R. BanKrP. 3009 dictates that “[i]n a chapter 7 case, dividends to creditors shall be paid as promptly as practicable”, a number of considerations limit distribution including, “the amount available and the number of creditors, how long it may be expected to be until the case is wound up and if dividends are to be paid to creditors of a certain priority rank whether it is clear that those who have a higher rank will clearly be paid.” 4 Daniel R. Cowans, BaNkruptcy Law and Practioe § 12.37 (7th ed.1998). Ultimately, “[t]here is no guarantee of course that assets will reach any of the ... classes or categories” of creditors.
 
 Id.
 

 Because the cost of collection efforts, or litigating a claim, are often more burdensome than beneficial, the “business judgment” rule has been employed in a variety of bankruptcy contexts.
 
 See Minges v. Zelman,
 
 602 F.2d 38, 43 (2d Cir.1979). The “business judgment” rule is commonly invoked in cases reviewing a trustee’s decision to reject an executory contract that potentially would provide some profit to the estate if fulfilled, but would ultimately result in greater profit to creditors if rejected.
 
 See e.g. Orion Pictures Corp. v. Showtime Networks, Inc.,
 
 4 F.3d 1095 (2d Cir.1993) (discussing application of business judgment rule to rejection of executory contracts);
 
 In re Veronica Ann Meehan,
 
 46 B.R. 96 (Bankr.E.D.N.Y.1985) (same). Under this rule, the trustee and the court in a bankruptcy proceeding “must exercise their discretion fairly in the interests of all who have had the misfortune of dealing with the debtor.”
 
 Minges,
 
 602 F.2d at 43. Thus, the trustee is allowed to use his best business judgment in deciding when “to use valuable property of the estate and [when] to ‘renounce title to and abandon burdensome property.’ ”
 
 Orion Pictures,
 
 4 F.3d at 1098.
 

 As the hearing transcript demonstrates, Judge Craig relied on the business judgment rule in granting the Trustee’s application for a final distribution and accounting, despite the Trustee’s failure to collect further funds to settle Frostbaum’s subordinated claim. As with a decision to reject an executory contract, or to abandon burdensome property, it was appropriate to rely on the Trustee’s business judgment in abandoning collection of this claim. The Trustee’s decision that further attempts to collect assets from the Debtor would be fruitless and only result in greater expense in administering the estate was well within the scope of decisions left to the Trustee’s business judgment. So long as this decision was not made arbitrarily, or in bad faith, it was appropriate for the Bankruptcy Court to accept this decision for the benefit of the estate and to grant the
 
 *476
 
 Trustee’s final application.
 
 See In re Curlew Valley Assocs.,
 
 14 B.R. 506 (Bankr.D.Utah 1981) (“In short the court will not entertain objections to a trustee’s conduct of the estate where that conduct involves a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code.”);
 
 see also In re Fulton,
 
 162 B.R. 589, 540 (Bankr.W.D.Mo.1998) (citing
 
 Curlew
 
 with approval and holding it appropriate for Trustee to close the estate and to abandon any causes of action for which recovery was highly unlikely);
 
 cf. In re Lyon & Reboli, Inc.,
 
 24 B.R. 152, 154-55 (Bankr.E.D.N.Y.1982) (quoting rationale of
 
 Curlew
 
 but distinguishing case at issue).
 

 Moreover, a trustee has a statutory duty to “collect and reduce to property of the estate for which trustee serves, and close such estate as expeditiously as is compatible with the best interest of parties in interest.” 11 U.S.C. § 704(1). Failure to do so may result in sanctions against the Trustee; in fact, a Trustee may be held liable for the costs incurred in pursuing worthless claims.
 
 See e.g. In re Keffas & Son Florist, Inc.,
 
 240 B.R. 466, 473-74 (Bankr.E.D.N.Y.1999). “This is [so] simply because any unjustifiable delay on the part of a trustee in effecting a distribution prejudices the creditors, for rarely are there sufficient proceeds to compensate the creditors for the opportunity costs incurred in waiting years for their final distribution.”
 
 Id.
 
 at 473. Given this obligation, it very well could have been negligent for the Trustee to keep the Debtor’s estate open indefinitely, while he attempted to collect money that he believed would never materialize.
 

 III. Conclusion
 

 Applying the above legal principles to the facts of this ease, I find no clear error in the Bankruptcy Court’s finding of facts at the March 8, 2001 hearing or any error of law in Judge Craig’s decision to grant the Trustee’s final application. The Trustee adequately represented that he had exerted his best efforts to collect monies to pay creditors pursuant to the terms of the stipulations, and that the Debtor had no more assets. Furthermore, the Trustee distributed nearly 100% on all unsecured general claims except for the subordinated claim. His decision not to pursue Frostbaum’s subordinated claim was a valid business judgment in light of the Debtor’s lack of assets and the Trustee’s obligation to expeditiously resolve other debts, as well as the fact that Frostbaum maintained a right of action to independently pursue this claim which had not been discharged. Further, the record demonstrates that Frostbaum’s attorney at the time was informed of, and approved of this resolution of the bankruptcy proceedings. I find no grounds to reverse the March 8, 2001 Fee Order of the Bankruptcy Judge, or to remand for further proceedings. Accordingly, it is hereby ORDERED that the Fee Order of March 8, 2001 is AFFIRMED. As discussed above, any other relief that Frostbaum attempts to seek in this appeal is not within the jurisdiction of this court’s appellate review of the bankruptcy proceedings.
 

 SO ORDERED.
 

 [1]
 

 . Frostbaum failed to designate or request for inclusion as part of his appeal record the transcript of the March 8, 2001 bankruptcy court hearing or the actual Fee Order entered by Judge Craig. Pursuant to Fed. R. Bankr.P. 8006, it is the appellant's obligation to supply any part of the lower proceedings transcript which is necessary to the adjudication of his claim on appeal. Because Frostbaum is challenging the validity of the March 8, 2001 Fee Order, the transcript of the hearing, which addressed the grounds for entering the final order, and the Fee Order are critical to this court's review. Accordingly, Frostbaum's failure to include, or even attempt to request such essential elements of the appeal record would justify this court’s dismissal of the claim without further consideration of the merits.
 
 See
 
 Fed R. Bankr.P. 8001;
 
 In re Sandra Cotton, Inc.,
 
 89 B.R. 324 (W.D.N.Y.1988) (holding failure to file transcript warranted dismissal of appeal); 9E Am Jur.2d
 
 Bankruptcy
 
 § 3550 (2000). In light of Appellant's
 
 pro se
 
 status on this appeal, however, and pursuant to this court's powers under Fed. R. Bankr.P. 8019, this court has obtained the transcript of the hearing and a copy of the Fee Order in order to expedite a decision on the merits and to avoid requests for additional time or to refile the appeal.