**In re Harold J. WEBER, Debtor.**

No. 94–43688.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 26, 2002.

Angelo P. Cantanzaro, Ashland, MA, for Harold J. Weber.

David L. Bertonazzi, Milford, MA, for Milford S & L Association.

Patrick J. Costello, Boston, MA, for Town of Framingham.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the Debtor's "Motion to Reopen Case," filed jointly by Ha-

rold J. Weber (the "Debtor") and Milford Federal Savings and Loan Association (the "Bank") (jointly the "Movants"). The Movants request that this Court reopen the Debtor's Chapter 11 case and void a final judgment of the Commonwealth of Massachusetts Land Court, Department of the Trial Court (the "Land Court"), dated May 5, 1997, in favor of the Town of Framingham (the "Town") (the "Land Court Judgment"). The Land Court Judgment foreclosed the Debtor's right of redemption in two parcels of real property located at 4 and 6 McLaughlin Street, in Framingham, MA, improved by two non-owner occupied residential buildings (collectively the "Property"). The Movants claim that the Land Court Judgment should be declared void as having been procured by actions which violated the automatic stay pursuant to 11 U.S.C. § 362(a).

## I. FACTS AND TRAVEL OF THE CASE

At case commencement, the Debtor and his wife, Constance Weber, were the trustees of the Laughlin Place Realty Trust (the "Trust"). The Trust owned the Property. The Debtor was the sole beneficiary. In 1992, the Town of Framingham effected a tax taking of the Property for failure to pay real estate taxes accruing since 1990, and, on December 8, 1993, filed a "Complaint to Foreclose the Right of Redemption" (the "Complaint") in the Land Court, pursuant to Mass.Gen.Laws ch. 60, § 65. According to the Land Court docket, a citation issued with respect to the Complaint on April 1, 1994 with a return date

of May 2, 1994. No further action was taken on the matter until March 3, 1996.

On August 18, 1994, the Debtor filed an individual petition in this Court under Chapter 11 of the Bankruptcy Code. The Town was listed among the Debtor's matrix of creditors and received notice of the case filing. Indeed, this Court takes judicial notice of several certificates of service that reflect notice to the Town of the bankruptcy case events. Ultimately, the Court confirmed the "Debtor's Third Amended Plan of Reorganization" (the "Plan") on June 18, 1996 and entered a "Final Decree Closing Case" on January 14, 1997. The Plan proposed to pay the Town its real estate tax arrearage in the amount of $52,996.60 as a priority claim. Pursuant to the Plan, the priority tax liabilities were to be "paid in cash in full in equal quarterly installments beginning 30 days after the Effective Date, and ending six years after the assessment date of the taxes."[1]

However, there is more to the story. During the course of the case administration and notwithstanding the various notices received by the Town relative to the pendency of the case, the Town did not cease its actions in the Land Court. On February 12, 1996, the Town's attorney, June P. Prue, sent a letter to the Land Court providing it with current addresses[2] for the Debtor, his wife and two other parties, consistent with Land Court procedures.[3] The letter specifically requested that the Land Court issue new citations. The letter did not advise the Land Court that the Debtor was the subject of a Chapter 11 case filing. The Land Court complied with the Town's request and issued a

---

1. The Debtor admittedly made few, if any, Plan payments to the Town. Nor did the Debtor stay current with its tax obligations accruing post confirmation.

2. The original citation was returned as undeliverable.

3. The Town stated in its "Opposition to the Debtor's Motion to Reopen Case …" that the letter was sent in response to a request for the information from the Land Court. This Court does not believe that this clarification is material to its discussion here.

"Special Citation"[4] by certified mail on March 1, 1996, with a return date of April 1, 1996. Service of the citation was made on March 6, 1996.[5] The Debtor did not respond to the citation and never answered the Complaint. In April 1997, the Land Court allowed a motion for general default and, on May 5, 1997 the Land Court Judgment entered, foreclosing the Debtor's right of redemption in the Property pursuant to Mass.Gen.Laws ch. 60, § 65.

Despite the entry of the Land Court Judgment, which ostensibly vested title to the Property in the Town, the Town continued thereafter to pursue the Debtor for municipal code violations and real estate tax assessments on the Property. The Debtor failed to respond. Finally, in May 2001, the Debtor entered into a purchase and sale agreement to sell the Property for $500,000.00, well in excess of the amount owed to the Bank and to the Town. When the Debtor requested information from the Town as to the tax balance due on the Property, he was informed of the Land Court Judgment entered against the Property in 1997 and that the Town now owned the Property.

An attempt to have the judgment vacated in the Land Court proved unsuccessful.[6] The instant "Motion to Reopen Case" followed in this Court. After a non-evidentiary hearing at which there appeared no genuine issues of material dispute, the matter was taken under advisement.

## II. *POSITIONS OF THE PARTIES*

The Debtor and the Bank urge this Court to reopen the Debtor's case in order to void the Land Court Judgment as a violation of the automatic stay. 11 U.S.C. § 362. In support, the Movants argue that the Town's letter to the Land Court, requesting the Special Citation, was a continuation of the Land Court proceeding against the Debtor at a time when the automatic stay was in force. That letter was sent to the Land Court in February 1996, four months before the Debtor's Plan was confirmed on June 18, 1996, terminating the automatic stay. The Debtor also argues that he was not provided with notice of the proceedings in the Land Court and that the Town's actions even after the date of the Land Court Judgment led him to believe that he still owned the Property. In light of the alleged violation of the automatic stay, the Movants request that this Court reopen the Debtor's case and void the Land Court Judgment to prevent the Town from realizing a substantial windfall. Finally, the Movants assert that sanctions for the Town's stay violation are appropriate and request a hearing to that end.

The Town objects to the reopening of this case. It argues that there was no violation of the stay. The Town notes that the letter Ms. Prue sent to the Land Court was required by state law and that its failure to comply with the Land Court procedural request for the new addresses would have constituted a denial of due process to the Debtor. The Town also argues that it took no substantive action in the Land Court proceeding until nearly sixty days after the close of the Debtor's

---

**4.** At the hearing, the Town's attorney informed the Court that a citation is "akin to a summons requesting that a party file an answer or otherwise defend its right in the case."

**5.** The certified mail receipt was signed by Frances Weber. No further information regarding this individual was provided to the Court.

**6.** Surprisingly, none of the parties has taken the opportunity to advise this Court as to what arguments were made by the Debtor and the Bank to the Land Court.

case. The Town characterizes Ms. Prue's letter as merely a ministerial act and claims that the Debtor and the Bank were afforded "ample time and opportunity ... to protect their interests in the Property". The Town asks the Court to deny the instant motion in the interest of justice and efficient administration.[7]

## III. DISCUSSION

The motion before the Court seeks two forms of relief. First, as a matter of procedure, the Movants seek the reopening of the case. Second, the Movants ask that, once the case is reopened, the Court void the Land Court Judgment and sanction the Town. Although sequential logic would suggest that the Court first determine whether to reopen the case, there is no reason to reopen the case if there was no stay violation. Accordingly, the Court will consider first whether the automatic stay was violated and allow that determination to properly influence whether the case should be reopened.

### A. Violation of the Automatic Stay

■ From the moment of case commencement until terminated by operation of law or court order, the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code serves as a shield to protect the "fresh start" promised by Congress to the honest debtor and to ensure the right of similarly situated creditors to a uniform distribution of nonexempt assets. Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir.1997). "The automatic stay is among the most basic of debtor protections under bankruptcy law." Id. at 975; see also, In re Steenstra, 280 B.R. 560, 566 (Bankr.D.Mass.2002).

■ The First Circuit Court of Appeals, in Soares, held that acts taken in derogation of the automatic stay are void, not merely voidable. Soares at 976. And where a creditor, having so acted, seeks a post facto annulment of the stay, its burden is to show extreme circumstances, with facts both unusual and unusually compelling. Id. at 977. Indeed, the respondent in Soares, seeking post facto relief, failed to meet that burden. Id. at 978. The background to that failure illuminates the instant case.

In Soares, the mortgagee had commenced, prepetition, an action in the Massachusetts Land Court incident to a foreclosure of its mortgage on property owned by the debtor. Id. at 972. The debtor failed to answer, and the mortgagee, having completed all requirements, sent a letter to the Court requesting a default judgment. Id. at 972. Two days later, the debtor commenced the bankruptcy case; however, no one advised the state court as to the existence of the automatic stay. Shortly thereafter, the state court issued its judgment defaulting the Debtor. Id. at 972. Subsequently, the mortgagee filed a motion for relief from the automatic stay in the bankruptcy court in order to foreclose on the mortgage. The debtor again defaulted, and relief from the automatic stay was granted. Id. at 972. The debtor then sought relief in the state court, complaining that the state court judgment had been obtained in violation of the automatic stay. The state court declined to vacate or modify its judgment, ruling that its postpetition actions had been only "ministerial" and its error harmless. Id. at 972.

Uncomfortable in victory, the mortgagee sought reassurance from the bankruptcy court in the form of retroactive stay relief

of the numerous certificates of service listing the Town of Framingham among those receiving service.

to ratify its actions and those of the state court. The bankruptcy court granted that relief, post facto. *Id.* at 972. On appeal, the First Circuit reversed. It ruled that, although the state court had acted without knowledge that the automatic stay was extant, its acts were not ministerial, and, more importantly, the relevant inquiry was not its knowledge, but the knowledge of the mortgagee. *Id.* at 974. The First Circuit noted that, while acts such as the mere scrivenering of a docket entry might be ministerial in nature, "acts undertaken in the course of carrying out the core judicial function are not ministerial...." *Id.* at 974. Further, "the compendium of ministerial acts excludes those involving deliberation, discretion, or judicial involvement." *Id.* at 974 (citing cases). Accordingly, the court held the state court judgment void as a matter of law. *Id.* at 976. In so doing, the *Soares* court expressed its unwillingness to "reward creditors who, despite notice of a bankruptcy filing, fail for no discernible reason to notify courts in which they have initiated proceedings of the changed circumstances." *Id.* at 978. Indeed, the First Circuit shed few tears for the mortgagee, noting that the mortgagee had an obligation to timely inform the state court of the existence of the automatic stay, and its failure to do so was the cause of its own demise. *Id.* at 978.

The Debtor in the instant case filed his bankruptcy petition on August 18, 1994. The Town, notwithstanding notice of the pending bankruptcy case, requested that a Special Citation issue in the Land Court proceeding. The requested Special Citation required a response from the Debtor

to protect his rights in the Property. In the final paragraph of the citation, the consequence of ignoring the citation is illustrated by the following language: "Unless your appearance is filed, your default will be recorded, the said complaint will be taken as confessed and you may be forever barred from contesting said complaint or any judgment entered thereon." It was attorney Prue's letter which prompted the Land Court to issue the citation and set the clock ticking against the Debtor. Among the acts forbidden by § 362(a) is the commencement or continuation of judicial proceedings against the debtor. 11 U.S.C. § 362(a)(1); *see also, Soares* at 973. That prohibition specifically includes the service of process.[8] In addition, the Town had an obligation to advise the Land Court that the automatic stay precluded further action by that court. It failed to meet that obligation.

The Town argues that the judgment was entered subsequent to the close of the Debtor's case and not while the automatic stay was pending. However, this Court's perspective ought not to be myopic. The offending act occurred during the pendency of the stay, and that act was a necessary predicate for the default judgment later issued against the Debtor. The Town argues that the letter from its attorney was a "mere ministerial act" and, accordingly, did not violate the automatic stay. The *Soares* court says otherwise. *See Soares* at 974. The Town further maintains that the letter sent from its attorney was intended to protect the Debtor's right to due process in the state court

8. Section 362(a) provides in part:
(a) Except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
11 U.S.C. § 362(a).

proceeding. Common sense says otherwise. Finally, the Town argues that it did not have notice of the bankruptcy case. The various certificates of service in this Court's files say otherwise.

"[C]ourts must display a certain rigor in reacting to violations of the automatic stay." *Soares* at 975–6 (citations omitted). This Court does so today and rules that the default judgment of foreclosure entered by the Land Court on May 5, 1997 is void as having been issued and predicated on acts committed in violation of the automatic stay.[9]

### B. Reopening the Bankruptcy Case

■ We now return to where we started. Pursuant to 11 U.S.C. § 350(b) and F.R.B.P. 5010,[10] a debtor or interested party may petition the court in which the case was closed to reopen the case in order to administer assets, accord relief to the debtor, or for other cause. The reopening of a case is discretionary, and the court should take into account equitable considerations. *In re Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991); *In re Borer,* 73 B.R. 29, 31 (Bankr.N.D.Ohio 1987). *See also, In re Chalasani,* 92 F.3d 1300, 1307 (2nd Cir.1996).

■ At first blush, a balance of the equities appears problematic. Years have passed since the confirmation of the Debtor's plan. During that time, the Town has taken advantage of its stay violation to take title to the Property. The reasons proffered by the Town for its stay viola-

tions are "lame." And, notwithstanding its alleged ownership of the Property, the Town continued to treat the Debtor as the Property's owner with respect to alleged code violations and ongoing real estate tax obligations. In counter balance, the Debtor is not free from criticism. The Debtor claims to have believed that he still owned the Property, and yet he remained disinclined to pay his real estate taxes. Also not forgotten is the Debtor's failure to pay the dividends owed to the Town under his confirmed Plan.

In the face of the Debtor's and the Town's respective failures to pass propriety tests, this Court would ordinarily be inclined to declare their respective fouls as offsetting and to move on. However, the actions of the Debtor and the Town do not estop the rights of the Bank. Further, the issues herein presented have more gravity than just a dispute between debtor and creditor. This Court is mindful of the opening words of *Soares:* " '[T]he dead tree gives no shelter.' T.S. Eliot, *The Waste Land, I, The Burial of the Dead* (1922). Like a shade tree, the automatic stay which attends the initiation of bankruptcy proceedings . . . must be nurtured if it is to retain its vitality." 107 F.3d 969, 971.

Here, a creditor with multiple notices of the pendency of a bankruptcy case and the automatic stay, continued to pursue rights against a debtor in a state court proceeding. Were the Court to reward those actions, the Town would succeed to the bene-

---

9. The Town did not specifically request that the stay be annulled post facto. Nevertheless, even were such relief requested, the result would not have changed. The facts here presented do not appear to withstand the rigorous test for post facto relief elucidated in *Soares.*

10. Section 350(b) provides:

"A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."
Bankruptcy Rule 5010 provides in pertinent part:
"A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."

fit of the Property, the value of which exceeds the amount due to the Town on account of its prepetition and post-petition claims. But if the Court deems the transfer of ownership to the Town void, the Town would still be able to recover its tax claim.[11] Only lost would be those damages which the Debtor might recover under 11 U.S.C. § 362(h).[12] And as to that measure of loss, this Court again turns for guidance to *Soares,* which referenced such prejudice as a "self-inflicted wound." 107 F.3d at 977, *quoting K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 916 (1st Cir. 1989). Accordingly, notwithstanding the passage of time, this Court deems it appropriate to reopen the case in order to render relief on account of the Town's violation of the automatic stay.

## IV. CONCLUSION

For all of the foregoing reasons, the "Motion to Reopen Case" is GRANTED and the Land Court Judgment entered in the Land Court on May 5, 1997, foreclosing the Debtor's right of redemption in the Property is declared void. A non-evidentiary hearing on monetary sanctions requested by the Movants against the Town of Framingham on account of its stay violation will be scheduled in due course.

---

11. For this reason, the equitable doctrine of laches, even if pleaded (which it was not) would have been inapplicable. In order for the defense of laches to apply, the party invoking the doctrine must demonstrate that the delay in bringing the action was unreasonable *and* that the delay was prejudicial to that party. *Adams v. Hartconn Assocs., Inc. (In re Adams),* 212 B.R. 703, 711 (Bankr.D.Mass. 1997). Here, the Town will still recover its taxes and will be hard-pressed to demonstrate any prejudice other than that resulting from its own wrongful behavior.

12. Section 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(h).