**In re Paul F. ST. ONGE and Anne P. St. Onge, Debtors.**

**Paul F. St. Onge and Anne P. St. Onge, Plaintiffs,**

**v.**

**Charles Zuccola, both individually and as Trustee of Bay Realty Trust, Defendant.**

**Bankruptcy No. 03–10346–MWV.**
**Adversary No. 04–1091–MWV.**

United States Bankruptcy Court, D. New Hampshire.

Aug. 16, 2004.

Stan Hawthorne, Wakefield, NH, for Plaintiffs.

Stuart M. Holber, Phillips, Gerstein, Holber & Channen, LLP, Haverhill, MA, for Defendant.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it Charles Zuccola's ("Defendant") motion to dismiss all counts of the complaint of Paul St. Onge and Anne St. Onge ("Plaintiffs") for equitable and other relief to Debtors and to

determine the extent of the indebtedness owed to the Defendant. The Defendant filed a memorandum in support of his motion. Although the Plaintiffs have not filed any response to the Defendant's motion, they orally objected to the motion at the hearing held on July 19, 2004. After hearing both parties' arguments, the Court took this matter under advisement. For the reasons set out below, the Defendant's motion to dismiss is granted.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### Facts

The Plaintiffs executed a note in the amount of $38,000 secured by a mortgage on their residence in favor of the Defendant and Florence M. Zuccola (not a party) as Trustees of Bay Realty Trust on June 30, 1988. The mortgage was recorded in the Rockingham Registry of Deeds on July 15, 1988. That mortgage is a second mortgage, and the first mortgage was granted to Dime Savings Service of New Hampshire. The note required the Plaintiffs to repay the principal within eleven (11) years, with interest at the rate of ten per cent (10%) per annum.[1] Monthly payments of $475.76 began on July 30, 1988, and were due on the 30th day of every month thereafter. The note also set forth a late charge of 5% for payments received

after the 15th day of the month. The note further set forth that:

If payments lapse for 90 days, the loan shall be considered in default, and balance. shall be due in thirty days along with the late charges, and shall be assessed thereafter at 1½ % per month on the unpaid balance. The interest rate will be renegotiated every five years.

Although the Plaintiffs were current on the mortgage payments until July 1990, they were sporadic between July 1990 and November 1997. During that time, a total of $33,346.16 was paid to the Defendant. The Plaintiffs have not made any payments since November 1997. On October 30, 1991, the Defendant notified the Plaintiffs of their default under the note and the mortgage, but the Defendant did not take any further action. On September 19, 2002, the Defendant demanded full payment of the entire loan balance and announced an intention to commence foreclosure proceedings by his letter, but no accounting as to the exact amount due was provided to the Plaintiffs.

On February 5, 2003, the Plaintiffs filed a Chapter 13 petition in this Court. In their schedules, the Plaintiffs listed the Defendant as holding an unsecured claim in the amount of $203,102.76 subject to dispute. The Plaintiffs proposed to pay a portion of the Defendant's claim in their Chapter 13 plan, and the Defendant objected to the confirmation of the plan. On June 10, 2003, the Defendant filed a proof of claim as a secured creditor, claiming that the Plaintiffs owed him a total of $191,623.61. The Plaintiffs voluntarily converted their case to Chapter 7 on September 16, 2003. On April 26, 2004, the

---

1. The note was not attached to either the Plaintiffs' complaint or the Defendant's motion. However, the Court reviewed the note as attached to the Defendant's motion for relief from the automatic stay filed in the case

in chief on February 6, 2004. The parties agreed to postpone the motion for relief until the determination of the adversary proceeding and upon adequate protection payments.

Defendant notified the Plaintiffs by letter that as of May 1, 2004, they owed $113,130.99 plus $25 per month for each month since February 1991. The Plaintiffs filed a complaint to determine the validity, priority or extent of the Defendant's lien on May 3, 2004, and this adversary proceeding ensued.

### DISCUSSION

The Plaintiffs' complaint contains seven counts, and the Defendant's motion to dismiss seeks dismissal of all counts. In ruling on the motion to dismiss, which is governed by Federal Rule of Civil Procedure 12(b) and its bankruptcy analogue, Federal Rule of Bankruptcy Procedure 7012, the Court "must accept as true the well-pleaded allegations of the complaint, draw all reasonable inference therefrom in the plaintiff's favor, and determine if the complaint contains facts sufficient to justify recovery on any cognizable theory." *Bezanson v. Gaudette (In re R & R Assocs., of Hampton)*, 248 B.R. 1, 4 (Bankr. D.N.H.2000) (citing *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998)).

Count I pled a cause of action under the Truth in Lending Act, 15 U.S.C. §§ 1601–1693r ("TILA"). The Plaintiffs allege that the Defendant violated the provisions of 15 U.S.C. § 1601 by not giving the Plaintiffs full disclosure, upon mandated and suitable forms and other notices as required under TILA. The Defendant argues that he is not a "creditor" for purposes of TILA and that the subject transaction was a "residential mortgage transaction," which is excluded from TILA. The Defendant also argue that the Plaintiffs failed to file an action within the time limitations of TILA.

■ Count I is dismissed on the grounds that the allegations were made after the expiration of statute of limitations. Any action under TILA may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e). It is uncontested that the note was executed on June 30, 1988, and that the mortgage deed was executed on July 1, 1988, and recorded on July 15, 1988. All violations of TILA alleged by the Plaintiffs were made well beyond the one year time limitation periods. Therefore, Count I is time-barred.

Count II alleged that the Plaintiffs did not waive their homestead exemption and are, therefore, entitled to $100,000 each. The Defendant seeks to dismiss this count arguing that the Plaintiffs waived any homestead right by virtue of their mortgage with Dime Savings Services of New Hampshire, therefore, there was no homestead right to waive regarding the Plaintiffs' second mortgage.

■ One needs to look no further than the deed itself to find that the Plaintiffs effectively waived their homestead right. New Hampshire law states that "no deed shall convey or encumber the homestead right, except a mortgage made at the time of purchase to secure payment of the purchase money, unless it is executed by the owner and wife or husband, if any, with the formalities required for the conveyance of land." N.H.Rev.Stat. Ann. § 480:5–a (2001). The mortgage deed was executed by the Plaintiffs husband and wife, witnessed, acknowledged, and recorded in the Rockingham County Registry of Deeds. Therefore, the homestead right was conveyed or encumbered by the mortgage deed executed by the Plaintiffs to the Defendant herein. *See Foley v. Brent (In re Foley)*, 214 B.R. 279, 280 (Bankr.D.N.H. 1997) (holding in the same situation as the instant case that "a deed, including a mortgage deed, executed by husband and wife, with the formalities required for the con-

veyance of land conveys or encumbers the homestead right.") Count II is dismissed.

■ Count III claimed that the letters of October 30, 1991, and September 19, 2002, are defective notices because they did not state the amount of principal, interest, attorney's cost or other fees with specificity. The October 30, 1991, letter is not included in the records before the Court. The Court finds that the September 19, 2002, letter is sufficient to constitute a notice of default and acceleration. The letter clearly states that the note has been dishonored and that the Defendant intended to collect the debt. Moreover, the Plaintiffs failed to cite statutes of which the letters purport to be in violation. Accordingly, Count III is dismissed.

■ Count IV alleged that the Defendant breached his obligations under the note in that he did not negotiate the interest rate every five years as stated in the note. The Defendant responded that the Plaintiffs could not hold him responsible to complete his obligation because the Plaintiffs were in default on the note since 1991. The Court agrees with the Defendant. Because it is the Plaintiffs who committed the first material breach, that breach justified the inaction by the Defendant. *See* 2 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 8.15 (3d ed.2004) (explaining the principles that lead a court to impose liability on the party that committed the first material breach); *See also Laconia Clinic, Inc. v. Cullen,* 119 N.H. 804, 807, 408 A.2d 412 (1979) (holding that one who is himself guilty of a wrong for breach of contract should not seek to hold his counter-promisor liable, citing *Farrelly v. Timberlane Regional School Dist.,* 114 N.H. 560, 566–67, 324 A.2d 723 (1974) which cited 6 S. WILLISTON, CONTRACTS § 813 at 5,6 (3d ed.1972)). Therefore, Count IV is dismissed.

■ Count V sought a determination that the interest to be assessed in the event of default at the rate of "1½ % per month on the unpaid balance" is ambiguous, unreasonable and unconscionable so that the accumulated interest should be disallowed. The Court does not see any reason for finding that the language of the note is ambiguous. Neither is the interest rate unconscionable. The Court notes that the interest rate at issue is allowed under N.H. RSA § 398–A:2(I) (1998),[2] which regulates interest rates on second mortgage home loans. Chapter 398–A was enacted with the legislative objective for scrutinizing lending practices and protecting consumers from excess rates of interest. *See Chroniak v. Golden Inv. Corp.,* 133 N.H. 346, 577 A.2d 1209 (1990) (explaining the legislative history and objective behind RSA Chapter 398–A). Although the Defendant is exempted from the requirements of Chapter 398–A,[3] the section 398–

**2.** Section 398–A:2(I), "Interest and Interest Rates; Disclosure" states that

I. The allowable rate of interest computed on the unpaid balance that any person may directly or indirectly charge, take or receive for a second mortgage loan secured by property which is occupied in whole or in part at the time said loan is made as a home by any obligor on the mortgage debt or any person granting or releasing any interest under said mortgage shall be the rate agreed upon in the note between borrower and lender, and shall be the rate agreed upon in the note between borrower and lender, and following the sixth month of any period in which a loan has been in continuous default not more than 1–1/2 percent per month on any unpaid balances. N.H.Rev.Stat. Ann. § 398–A:2(I) (1998 & Supp.2003).

**3.** RSA 398–A:10(II), reads as follows:
The provisions of this chapter shall not apply to any natural person making not more than 4 second mortgage home loans within any period of 12 consecutive months with his own funds and for his own investment

A:2(I) is a good standard for an unconscionable interest rate. Accordingly, Count V is dismissed.

Count VI asserted that the Defendant's right under the note and the mortgage is barred by the equitable doctrine of laches because the Defendant did not pursue the payment but instead allowed the interest on the note to accumulate in order to gain unreasonable wealth. Under New Hampshire law, "actions upon notes secured by a mortgage of real estate may be brought as long as the plaintiff is entitled to bring action upon the mortgage." N.H.Rev.Stat. Ann. § 508:6 (1997). Thus, because mortgage proceedings are governed by a twenty-year statute of limitations, as a matter of law, the Defendant is permitted to assert his rights under the note and the mortgage. *See* N.H.Rev.Stat. Ann. § 508:2 (1997).

 The Court notes that a mortgagee's right to foreclose on a mortgage is subject to the equitable defense of laches. *See Phinney v. Levine*, 117 N.H. 968, 971, 381 A.2d 735 (1977) (holding that defendant's delay in foreclosing on the mortgage constituted laches barring any rights under the notes). However, laches is not triggered by the mere passage of time, and the trial court has broad discretion in deciding whether the circumstances justify its application. *See Miner v. A & C Tire Co., Inc.*, 146 N.H. 631, 633, 776 A.2d 1286 (2001). In order for the defense of laches to apply, the party invoking the doctrine must demonstrate that the delay in bringing the action was unreasonable and that the delay was prejudicial to that party. *In re Weber*, 283 B.R. 630, 636, n. 11 (Bankr. D.Mass.2002). It is true that the Defendant had unreasonably delayed in asserting his rights, but the Plaintiffs failed to show any prejudice from the delay. The

Plaintiffs did not present facts to show that they had sufficient funds during the past years to pay off the loan so as not to accrue interest on the note. In fact, due to the Defendant's delay in foreclosing the property, the Plaintiffs could live on the property without making any payment for several years. Balancing the equities, the Court finds that the doctrine of laches does not apply to this case. Count VI is dismissed.

Count VII alleged that the Defendant had unjustly enriched himself through his actions and inactions. The Defendant responded that the terms of the note are just and lawful and that the Plaintiffs have had the use of these funds since 1998. The Plaintiffs failed to plead sufficient facts to demonstrate how the Defendant enriched himself at the expense of the Plaintiffs. Count VII is denied.

 As a general matter, the Defendant argues that the Plaintiffs lack standing to sue him because they did not list any of these claims in their bankruptcy petition. The Court disagrees. As described above, the Plaintiffs listed the Defendant as an unsecured creditor in their schedules, and the Plaintiffs proposed to pay a portion of the Defendant's claim in their Chapter 13 plan prior to their case being converted. Further, even if these claims were not listed in the bankruptcy petition, neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure precludes the unlisted creditors from being sued. However, the Court accords to the Defendant's argument that the Plaintiffs do not have standing to bring this adversary proceeding. The rights of action arising upon the contracts or property of the debtors, not yet resolved into suit, pass to the trustee as a representa-

---

without an intent to resell such mortgage loans.

N.H.Rev.Stat. Ann. § 398–A:10(II) (1998 & Supp.2003).

tive of the estate. *See* 1 KING ET AL., COLLIER ON BANKRUPTCY ¶ 704.03 (15th rev. ed.2004). On November 28, 2003, the Chapter 7 trustee filed a report of no distribution stating that the estate has been fully administered. The trustee is allowed to use his best business judgment in deciding not to pursue assets that are limited or difficult to collect, and this Court respects the trustee's business judgment. *See Frostbaum v. Ochs*, 277 B.R. 470 (E.D.N.Y.2002).

## CONCLUSION

For all of the reasons stated above, the Defendant's motion to dismiss is granted. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate judgment consistent with this opinion.