Hillsborough-southern judicial district
No. 98-099

### DAVID SNEDEKER

v.

### ARLENE SNEDEKER

March 21, 2000

*Orr & Reno, P.A.*, of Concord (*Pamela E. Phelan* on the brief and orally), for the plaintiff.

*Barry I. Harkaway*, of Nashua, by brief and orally, for the defendant.

*Philip T. McLaughlin*, attorney general (*Suzan M. Lehmann*, assistant attorney general, on the brief and orally), for the State, as *amicus curiae.*

PER CURIAM. The plaintiff, David Snedeker, appeals an order of the Superior Court (*Brennan*, J.) requiring him to pay the defendant, Arlene Snedeker, $192 per week in child support. He argues that the trial court erroneously calculated his child support obligation. We affirm.

The plaintiff and the defendant were married on April 24, 1993. The parties have two children. The plaintiff also has two children

from a prior marriage for whom he is obligated to pay child support. In November 1997, the trial court issued a divorce and custody decree awarding the parties joint legal custody and the defendant primary physical custody of the parties' two children. The defendant was unemployed at the time the support order was decreed. The decree required the plaintiff to make weekly payments of $192 to the defendant for child support.

In calculating the plaintiff's child support obligation, the trial court subtracted from his monthly gross income: (1) his child support obligation for his two children from his prior marriage, *see* RSA 458-C:2, I(a) (1992) (amended 1998); and (2) fifty percent of the medical insurance paid for the parties' minor children, *see* RSA 458-C:2, I(b) (1992) (amended 1998). The difference yielded the plaintiff's "adjusted gross income." *See* RSA 458-C:2, I (1992) (amended 1998). The court next applied to the plaintiff's adjusted gross income the Child Support Guideline Calculation Table (Table) to ascertain the amount of deduction to which the plaintiff was entitled for federal income tax and F.I.C.A. withholding, and subtracted that allowable deduction from the plaintiff's adjusted gross income. This yielded the plaintiff's "net income." *See* RSA 458-C:2, VI (1992) (amended 1998). Next, the court calculated the plaintiff's child support obligation by multiplying the plaintiff's net income by thirty-three percent. *See* RSA 458-C:3 (1992) (amended 1998) (child support obligation for two children is thirty-three percent of obligor's net income). The product yielded the weekly child support obligation of $192. *See* RSA 458-C:3, II.

On appeal, the plaintiff contends that when an obligor is entitled to deductions for court-ordered child support and for medical insurance, *see* RSA 458-C:2, I, use of the Table contravenes the plain language of RSA 458-C:2, VI and :3, II(a). Specifically, he contends that because the Table fails to account for deductions afforded under RSA 458-C:2, I, it erroneously bases the amount of his federal income tax and F.I.C.A. withholding deductions on his adjusted gross income rather than on his gross income. As a result, he argues, the court's order improperly obligates him to pay more in child support than is required by RSA 458-C:2, VI and :3, II(a).

■ In order to determine whether the court erred in its computation, we turn to RSA 458-C:3. In matters of statutory interpretation, "this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *K & J Assoc. v. City of Lebanon*, 142 N.H. 331, 333, 703 A.2d 253, 254 (1997) (quotation omitted). "[W]e first examine the language found

in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Bohan v. Ritzo*, 141 N.H. 210, 213, 679 A.2d 597, 600 (1996) (quotation omitted).

RSA 458-C:3 sets forth the formula for calculating an obligor's child support obligation:

> The total support obligation shall be derived by adding the obligor's and obligee's combined adjusted gross income and subtracting from this sum actual state income taxes paid and *the amount of standard deductions for federal income tax and F.I.C.A. withholding as published and adjusted on an annual basis by the office of child support enforcement services* and multiplying that sum by [the percentage specified depending upon the number of children].

RSA 458-C:3, II(a) (emphasis added). RSA 458-C:3 does not specify whether the "standard deductions" for federal income tax and F.I.C.A. withholding are based on adjusted gross income or gross income. RSA 458-C:2, VI, relied upon by the plaintiff, provides no further guidance. It defines "net income" as

> adjusted gross income less state income taxes actually paid, and standard deductions published and adjusted on an annual basis by the office of child support enforcement services, division of human services, department of health and human services, for:
>   (a) Federal income tax; [and]
>   (b) F.I.C.A.

RSA 458-C:2, VI. RSA 458-C:2, VI, however, clearly delegates to the department of health and human services the task of establishing uniform guidelines. *See also* RSA 458-C:3, II(a), :1 (1992) (purpose of statute includes establishing uniform system to determine child support).

Pursuant to the statutory directive, the New Hampshire Department of Health and Human Services developed the Table consisting of

> columns of [adjusted gross] income ranges that correspond to columns identifying standard deductions for federal income tax withholdings and F.I.C.A./Medicare which are followed by corresponding columns indicating the amounts of child support due. The federal income tax amount is standardized and is based on the amount an employer

withholds from a single person's monthly income who has claimed a withholding allowance for two people. The FICA amount is calculated based on the social security tax rate of 6.2% of the monthly income plus 1.45% of the monthly income for Medicare.

N.H. CHILD SUPPORT STUDY COMMITTEE — FINAL REPORT at 11 (August 30, 1995). The Table bases the deductions for federal income tax and F.I.C.A. withholding on *adjusted gross income.*

The plaintiff correctly points out that basing his federal income tax and F.I.C.A. withholding deductions upon his adjusted gross income rather than his gross income results in a higher net income from which to compute his child support obligation. We recognize that basing federal income tax and F.I.C.A. withholding deductions on adjusted gross income may result in subtracting less than may have actually been withheld for federal income tax purposes. *See* 26 U.S.C.A. §§ 3401, 3402 (West 1989) (basing income tax withholding, not on gross income nor on adjusted gross income, but rather on "wages"). In this appeal, we are called upon only to review whether the trial court erred in using the Table that based the plaintiff's federal tax and F.I.C.A. withholding deductions on adjusted gross income. We hold that it did not.

In 1993, the legislature created a committee to review the child support guidelines. *See* Laws 1993, ch. 256. The New Hampshire Child Support Study Committee (committee) examined the Table that based federal income tax and F.I.C.A. withholding deductions upon adjusted gross income. In 1995, the committee issued a final report in which it "voted to retain the guidelines tables that New Hampshire has been using since 1989." N.H. CHILD SUPPORT STUDY COMMITTEE — FINAL REPORT at 11 (August 30, 1995). "The committee concluded that the application of the tables used in New Hampshire is fair to both the payor and payee of a child support proceeding." *Id.*

■ The Table establishes uniform guidelines and is therefore consistent with the purpose of the child support guidelines, which is to establish a "uniform system" for determining the amount of child support to be awarded. *See Giles v. Giles,* 136 N.H. 540, 543, 618 A.2d 286, 288 (1992); RSA 458-C:1. In addition, the Table relates in a reasonable manner to federal income tax and F.I.C.A. withholding. Finally, the Table has been reviewed by a legislative study committee, and the legislature itself has taken no action to change it. *Cf. Hamby v. Adams,* 117 N.H. 606, 609, 376 A.2d 519, 521 (1977) (long-standing practical and plausible interpretation of statute

without legislative interference constitutes evidence that administrative construction conforms to legislative intent).

If use of the Table in a particular case results in an unjust or inappropriate support order, the superior court has authority to adjust the amount of support ordered. *See* RSA 458-C:4, II (1992); RSA 458-C:5 (1992) (amended 1998). Although that issue was raised before the trial court in the plaintiff's motion for reconsideration, it is not raised on appeal. Therefore, we will not address it.

*Affirmed.*

THAYER, J., sat but, on administrative leave, did not participate; NADEAU, J., did not sit; the others concurred.