Littleton Family Division
No. 2000-630

IN THE MATTER OF CHRISTOPHER W. CROWE
AND JENNIFER M. CROWE

Argued: June 5, 2002
Opinion Issued: August 19, 2002

*Marilyn Billings McNamara*, of Amherst, by brief and orally, for the petitioner.

*Foley & Ray, P.C.*, of Plymouth (*Robert J. Foley* on the brief and orally), for the respondent.

BROCK, C.J. The petitioner, Christopher W. Crowe, appeals the divorce decree of the Littleton Family Division (*Cyr,* J.) awarding the respondent, Jennifer M. Crowe, alimony, child support, and approximately twenty-five percent of the value of the marital assets. We affirm.

The parties began living together in 1992, had a child in 1996, and married in 1997. The petitioner is the sole owner of two businesses, a logging operation and a trucking company. At the petitioner's expense, the respondent attended cosmetology school and opened a hair salon. She did not pursue the profession, however, due to the birth of their child and the limited income she generated from it.

While the parties lived together prior to their marriage, the petitioner purchased forty acres of land upon which he built an eight-bedroom log home. In addition to providing the financing, the petitioner played a significant role in the construction of the home. The respondent made no financial contribution. Although the parties disagree as to the amount of work she contributed, the trial court found that the respondent helped paper walls, paint, tile, remove construction debris and prepare the grounds, in addition to caring for their child and occasionally for the petitioner's children from a former marriage. For three years, while the house was under construction, the parties lived in the basement area, which contained four bedrooms. The home was completed in 1997 after the parties were married.

During the parties' relationship, the petitioner acquired a second parcel of land as a gift from his father. In 1996, he constructed a building, which houses three rental units, on that property.

In 1999, the petitioner filed a libel for divorce. Following a hearing in March 2000, the trial court granted the parties a divorce on the grounds of irreconcilable differences. The court awarded joint legal custody of their child, granted the respondent primary physical custody of the child, and ordered the petitioner to pay child support in the amount of $272 per week. The petitioner was also ordered to pay the respondent $140,000 as her equitable share of the marital assets, $100 per week in alimony for thirty-six months provided that she remains enrolled in a paralegal studies program, and her health insurance premium for up to thirty-six months. The court divided the furniture and personal property between the two parties and awarded the petitioner the marital home and rental property.

The petitioner's motion for reconsideration was denied. This appeal followed. The petitioner argues that the trial court: (1) applied an incorrect standard in distributing the marital assets, considering the short duration of the marriage and the fact that he developed the assets prior to the marriage; (2) erroneously subsumed the period of premarital cohabitation into the duration of the marriage and treated as marital assets property acquired during that time period; (3) improperly determined his income for purposes of calculating child support; (4) erroneously failed to deduct the alimony awarded to the respondent from his income in calculating child support; and (5) erred because the disposition of property, alimony and child support, in its entirety, was excessive.

We afford trial courts broad discretion in determining matters of property distribution, alimony and child support in fashioning a final divorce decree. *In the Matter of Fowler and Fowler*, 145 N.H. 516, 519 (2000). We will not overturn the trial court's decision absent an unsustainable exercise of discretion. *See id.*; *State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

██ We turn first to the property settlement. RSA 458:16-a, I (Supp. 2001) defines property as "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." The statute does not classify property based upon when or by whom it was acquired, but rather assumes that all property is susceptible to division. *See* RSA 458:16-a, I. RSA 458:16-a, II (Supp. 2001) creates a presumption that an equal distribution of marital property is equitable, absent special circumstances. The statute enumerates various factors for the court to consider, such as the length of the marriage, the ability of the parties to provide for their own needs, the needs of the custodial parent, the contribution of each party during the marriage and the value of property contributed by each party. RSA 458:16-a, II. Under the statute, the court need not consider all factors or give them equal weight. *See* RSA 458:16-a, II.

██ A marriage of only one or two years may be considered differently from a long-term marriage of ten, twenty or thirty years. *Rahn v. Rahn*, 123 N.H. 222, 225 (1983). In a short-term marriage, it may be easier to give back property brought to the marriage and still leave the parties in no worse position than they were in prior to it. *Id.* Still, the length of the marriage and the contributions of each party are but two factors for the court to consider in fashioning an equitable division of assets. *See* RSA 458:16-a, II.

After applying the statutory factors to the facts of the case, the trial court found an equal division would not be fair or equitable and awarded

the respondent $140,000, approximately twenty-five percent of the net value of the marital assets. The trial court emphasized that, although the parties were only married two years, they had to provide for a child. The court considered all the equities, including the disparity in the parties' earning capacities, the fact that the petitioner was awarded the marital home and rental property, and the fact that the respondent was given primary custody of the child. The court also took into account the contributions each party made to the marriage and the value of the property.

The court concluded, after dividing the furniture and personal property, that the remaining marital assets included the home, the rental property and the business equipment. The court found the parties' equity in these assets to be $216,000, $90,000 and $245,485, respectively. Based upon this finding, the court concluded that the total net value of the marital assets was $551,485. It reasoned that awarding the respondent approximately twenty-five percent of this value was appropriate in light of her need to obtain suitable housing for herself and the parties' child and her inability to engage in gainful employment without substantially interfering with the child's interest. Having reviewed the record before us, we cannot say that the trial court's division of property was an unsustainable exercise of discretion.

As to the petitioner's contention regarding the trial court's treatment of property acquired while the parties resided together before marriage, we believe that the trial court properly considered the contributions made by each party to the home and other property. RSA 458:16-a, I, makes no distinction between property brought to the marriage by the parties and that acquired during marriage; thus, all property owned by each spouse, regardless of the source, may be included in the marital estate. The petitioner urges us to fashion a specific rule regarding premarital cohabitation as it relates to the division of property. It is not necessary for us to do so in this case because we conclude that even had the parties not lived together prior to their marriage, the trial court's decision would have been a sustainable exercise of discretion.

Next, we turn to the child support order. Specifically, the petitioner argues that the court based its order on an income figure that was not supported by the evidence presented for the prior tax year.

In calculating child support, the trial court must first determine each parent's present income. *See* RSA 458-C:3, II (Supp. 2001); *Rattee v. Rattee*, 146 N.H. 44, 46 (2001). The court makes the final decision as to what income figures should be used in the calculation based upon the facts presented at the hearing. *See Hillebrand v. Hillebrand*, 130 N.H. 520, 526

(1988). "The credibility and forthrightness of the noncustodial parent in disclosing income is a factor to be considered in accepting evidence of net income." *In re Marriage of Karonis*, 693 N.E.2d 1282, 1287 (Ill. App. Ct. 1998).

Here, the trial court rejected the petitioner's estimation of his earnings and found that the amount listed on his 1999 tax return did not truly reflect his current income. The court compared the petitioner's tax returns for 1996 through 1999 and found that his logging business had grossed over $1 million in 1997, 1998 and 1999, respectively, while his trucking business grossed over $200,000 for each of those years. The court noted that the petitioner's reported net earnings for the years 1996, 1997 and 1998 were considerably higher than that reported in 1999. Although the gross income and depreciation figures for 1997 and 1999 were similar, his net profit in 1997 was reported as $66,773, versus a reported net profit of $9,424 in 1999. The court found the depreciation taken on the business equipment to be a recognized expense for tax purposes but did not require an outlay of funds.

In addition to the tax returns, the court considered the logging business records, indicating that the petitioner had drawn approximately $31,000 in personal expenses from the business between January 1, 1999, and August 28, 1999. It also considered as income the value of bartered exchanges and employee labor charged to the business, which the petitioner utilized to build the home and rental property. Finally, the court took into account the rental property, which generated $1,100 per month in rent.

■Although averaging income over several years is not proper, *Rattee*, 146 N.H. at 46, the court here relied upon past tax returns, as well as other information, to determine the petitioner's present income because it found the petitioner's proffered estimation of his income to be unreliable. We conclude that the court's determination that the petitioner's monthly income was $7,500 is supported by the record and did not constitute an unsustainable exercise of discretion.

The petitioner further argues that, in calculating child support, the alimony awarded to the respondent should have been deducted from his gross income pursuant to RSA 458-C:2 (Supp. 2001). We disagree.

■As a preliminary matter, we address the respondent's argument that the petitioner did not request a deduction of alimony and thus failed to preserve this issue. Issues of child support are governed by an express legislative directive that the level of support be calculated according to the guidelines, unless the presiding officer makes a specific finding that application of the guidelines would be unjust or unfair. *Giles v. Giles*, 136 N.H. 540, 544 (1992); *see* RSA 458-C:4, I-II (1992). Once a case involving

the issuance or modification of a child support order is properly before the trial court, application of the guidelines is not contingent upon a specific request by the parties. *Giles*, 136 N.H. at 544.

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Snedeker v. Snedeker*, 145 N.H. 19, 20 (2000). We first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used. *Id.* at 20-21. Where statutory language is ambiguous or where more than one reasonable interpretation exists, we must look beyond the statute itself to determine its meaning. *See Appeal of Routhier*, 143 N.H. 404, 406 (1999).

RSA 458-C:2, I(a) allows a deduction from gross income, for purposes of the child support guidelines, of "[c]ourt-ordered or administratively ordered support actually paid to others, for adults or children." Because the statute is silent as to the timing of the calculations of child support and alimony, it is unclear whether the deduction from gross income includes alimony ordered to the other parent in the current proceeding. We therefore conclude that this provision is ambiguous.

We construe the guidelines to intend that child support determinations occur *before* spousal support is established. Accordingly, we hold that alimony ordered in the current divorce decree is not the type of support contemplated by RSA 458-C:2, I(a). Instead, the provision allows a deduction for pre-existing spousal or child support obligations paid to persons other than those in the case specifically under consideration, such as former spouses and children from former marriages.

As a practical matter, once child support has been calculated, a trial court can consider it in determining the obligor's resources for purposes of establishing alimony. *See* RSA 458:19, I(b) (Supp. 2001). Thus, alimony to the current spouse may be reduced due to the child support calculation, based upon the obligor's ability to pay. Reducing alimony to ensure full support of the children is reasonable considering that both parents share responsibility for supporting their children. *See* RSA 458-C:1 (1992). Alimony to a former spouse, however, is fixed and is not reduced when child support is ordered to children in the current proceeding. If that alimony were not deducted from gross income, it could result in the obligor owing child support and alimony beyond his or her ability to pay.

Our reading of the statute comports with the policy considerations behind the child support guidelines — that supporting children is a priority and therefore child support should be the initial consideration. *See*

House Comm. on Children, Youth and Juvenile Justice, Hearing on HB 677 (March 8, 1989) (testimony of Arthur A. Stukas, Administrator, Office of Child Support Enforcement). Moreover, our interpretation is consistent with other States' child support guidelines, see, e.g., Colo. Rev. Stat. § 14-10-115(7)(d) (2001); Me. Rev. Stat. Ann. tit. 19-A, § 2001, 5(E) (West 1998), or their interpretations of the guidelines, see, e.g., Driscoll v. Driscoll, 414 N.W.2d 441, 445-46 (Minn. Ct. App. 1987); In re Marriage of Roullier, 746 P.2d 1081, 1087-88 (Mont. 1987).

Finally, the petitioner challenges as excessive the trial court's entire order on the disposition of property, alimony and child support. Having already found the property division and child support order to be within the trial court's discretion, we turn to the alimony award.

RSA 458:19, I (Supp. 2001) provides that a court may award alimony if: (1) the party in need lacks sufficient income, property or both to provide for his or her reasonable needs, considering the marital lifestyle; (2) the payor is able to meet his or her reasonable needs, considering the marital lifestyle; and (3) the party in need cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs or is the custodian of a child whose circumstances make employment outside the home inappropriate. In determining the amount of alimony to be awarded, a trial court must consider "the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; [and] the opportunity of each for future acquisition of capital assets and income." RSA 458:19, IV(b) (Supp. 2001). Further, the court may consider the economic contribution of each party to the respective estates, as well as non-economic contributions to the family unit. RSA 458:19, IV(d) (Supp. 2001).

The trial court awarded the respondent $100 per week in rehabilitative alimony for a period of three years, provided she remains enrolled in a paralegal program, to assist her in becoming self-sufficient. After considering the factors specified in RSA 458:19, IV(b) and IV(d), it stated:

> This court finds that the respondent lacks sufficient property and income to provide for her reasonable needs. This court also finds that the petitioner has sufficient assets and income to be able to support himself while providing support for the respondent. As the respondent is enrolled in a paralegal program and is able to work on a part time basis and is the primary care giver for the minor child, this court finds that she

is unable to obtain employment at the present time to meet her reasonable needs.

Given the duration and purpose of the alimony award, in addition to the respondent's limited earning capacity and need to provide for herself and the parties' child, we cannot say that the alimony award was an unsustainable exercise of discretion.

We assume without deciding that it is proper for us to consider the trial court's decree on the disposition of property, alimony and child support as a whole. After subtracting the amount of deduction to which the petitioner was entitled for federal income tax and F.I.C.A. withholding as shown on the 2000 child support guidelines, the petitioner's net monthly income was approximately $5,300. In addition to twenty-five percent of the net value of the marital assets, he was ordered to pay the respondent $1,610 per month in alimony and child support, or approximately thirty percent of his net monthly income. Given the circumstances of this case, we cannot say that the decree in its entirety was excessive.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.