Cheshire
No. 2005-380

IN THE MATTER OF NANCY BAKER AND ROBERT WINKLER

Argued: May 18, 2006
Opinion Issued: September 27, 2006

*Fernald, Taft, Falby & Little, P.A.*, of Peterborough (*Mark D. Fernald* on the brief and orally), for the petitioner.

*Bragdon & Berkson, P.C.*, of Keene (*Stephen B. Bragdon* and *Susan Lachman* on the brief, and *Mr. Bragdon* orally), for the respondent.

HICKS, J. The petitioner, Robert Winkler (father), appeals an order of the Superior Court (*Sullivan*, J.) granting the petition of the respondent, Nancy Baker (mother), for modification of child support. On appeal, the father argues that the trial court erred in failing to subtract his obligation to pay his adult child's college education expenses from his gross income before calculating his support obligation for his minor child under the child support guidelines. We affirm.

The parties divorced in February 2002 and received joint legal custody of their two children. Permanent stipulations were signed by the parties in January 2002, and were incorporated into the decree of divorce. Neither party was obligated to pay child support, but the father was made "solely responsible for the costs of [the children] obtaining their bachelors degrees." The permanent stipulation stated that "[t]his responsibility is based upon the unequal division of the assets of the parties including but not limited to Corning Stock options and Merrill Lynch payroll stock deduction amount."

In late summer of 2004, the parties' younger daughter, who had been residing with her father, decided she would prefer to reside with her mother for her senior year of high school. In September 2004, the mother filed a petition for modification seeking child support. The father argued that the child support calculation should be based upon his adjusted gross income, which is defined in RSA chapter 458-C as his gross income less "court-ordered support." He contended that the amount he was paying for the college education of his older daughter constituted court-ordered

support, and therefore should be deducted from his gross income. The trial court disagreed.

On appeal, the father argues that, in calculating child support, the monthly payment he was making for his older daughter to attend college should have been deducted from his gross income pursuant to RSA 458-C:2, I(a) (2004). Specifically, he argues that the amount he is paying for college represents "court-ordered support" within the meaning of RSA 458-C:2, I(a) because it was made part of the parties' permanent stipulation.

New Hampshire's child support guidelines are codified in RSA chapter 458-C, and establish a uniform system to determine the amount of child support awards. *In the Matter of Plaisted & Plaisted*, 149 N.H. 522, 524 (2003). The guidelines "shall be applied in all child support cases," including orders modifying an existing support order. RSA 458-C:4, I (2004).

There is a rebuttable presumption that a child support award calculated under the guidelines is the correct amount of child support. RSA 458-C:4, II (2004). The presumption may be overcome and the trial court may deviate from the guidelines when it is shown by a preponderance of the evidence that the application of the guidelines would be unjust or inappropriate because of "special circumstances." *In the Matter of Barrett & Coyne*, 150 N.H. 520, 524 (2004).

Under RSA 458-C:5, I (2004) (amended 2005), the trial court may adjust the application of the child support guidelines in light of certain special circumstances, such as the "economic consequences to either party of providing for the voluntary or court-ordered postsecondary educational expenses of a natural or adopted child," RSA 458-C:5, I(i). If the trial court does so, it must make a written finding as to why a special circumstance pursuant to RSA 458-C:5 justifies adjusting the child support guidelines to avoid an unjust or inappropriate result. RSA 458-C:4, II (2004); *Giles v. Giles*, 136 N.H. 540, 545 (1992).

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Snedeker v. Snedeker*, 145 N.H. 19, 20 (2000). We first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used. *Id.* at 20-21. Where statutory language is ambiguous or where more than one reasonable interpretation exists, we must look beyond the statute itself to determine its meaning. *See Appeal of Routhier*, 143 N.H. 404, 406 (1999). Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 445 (2003).

RSA 458-C:2, I(a) allows a deduction from gross income, for purposes of the child support guidelines, of "[c]ourt-ordered or administratively ordered support actually paid to others, for adults or children." We have previously held that this provision was ambiguous regarding the timing of a deduction for contemporaneously ordered alimony in determining child support. *In the Matter of Crowe & Crowe*, 148 N.H. 218, 224 (2002). We stated, "[T]he provision allows a deduction for pre-existing spousal or child support obligations paid to persons other than those in the case specifically under consideration, *such as former spouses and children from former marriages.*" *Id.* at 224 (emphasis added). We also said that "[o]ur reading of the statute comports with the policy considerations behind the child support guidelines—that supporting children is a priority and therefore child support should be the initial consideration," before determining the amount awarded for adult maintenance. *Id.* at 224-25.

In this case, both children are part of the same case specifically under consideration; therefore, applying the rationale in *Crowe*, we conclude that the deduction in RSA 458-C:2, I(a) is not available to the father. Our interpretation is consistent with other jurisdictions' interpretation of child support guidelines. *See Driscoll v. Driscoll*, 414 N.W.2d 441, 445 (Minn. Ct. App. 1987); *In re Marriage of Potts*, 696 N.E.2d 1263, 1266 (Ill. App. Ct. 1998); *Young v. Young*, 971 S.W.2d 386, 392 (Tenn. Ct. App. 1997).

Furthermore, the legislature addressed the "economic consequences to either party of providing for the voluntary or court-ordered postsecondary educational expenses of a natural or adopted child" by treating them as special circumstances that may justify a deviation from the support guidelines. RSA 458-C:5, I(i). The father does not argue that the trial court unsustainably exercised its discretion by declining to deviate from the child support guidelines pursuant to RSA 458-C:5. Therefore, having found no legal error in the trial court's interpretation of RSA 458-C:2, I(a), we affirm.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.