Strafford
No. 2007-043

CHURCHILL REALTY TRUST

v.

CITY OF DOVER ZONING BOARD OF ADJUSTMENT

Argued: September 19, 2007
Opinion Issued: January 15, 2008

668

*McNeill, Taylor & Gallo, P.A.*, of Dover (*Francis X. Bruton, III* on the brief and orally), for the petitioner.

*Allan B. Krans, Sr.*, of Dover, by brief and orally, for the respondent.

HICKS, J. The petitioner, Churchill Realty Trust, appeals an order of the Superior Court (*Mohl*, J.) affirming a decision of the respondent, City of Dover Zoning Board of Adjustment (ZBA), which in turn upheld a denial by the Dover building official of the petitioner's proposed apartment project expansion. We reverse.

The trial court found the following facts. The petitioner owns a parcel of land in Dover and an adjacent parcel of land in Rollinsford. The Dover parcel provides the only means of access to the Rollinsford parcel. In 1972, a previous owner of the Dover parcel obtained site plan approval for an apartment complex (the Dover Project). The project, known as Granite Village Apartments, consists of four buildings, each of which includes thirty units. All of the buildings were constructed within Dover as it existed in 1972. In 1993, however, the municipal boundary between Dover and Rollinsford was adjusted so that two of the existing buildings now lie partially within Rollinsford.

Sometime after the site plan of the original Dover Project was approved, the developer acquired the Rollinsford parcel and constructed a recreation area and pool on that lot. Both the Dover and Rollinsford parcels were subsequently conveyed to the petitioner.

At the time the existing buildings were constructed, neither Rollinsford nor Dover had an ordinance imposing density requirements. Dover adopted such an ordinance in 1999, creating a density requirement for multi-family buildings of 5,000 square feet of land, excluding wetlands, per unit. The trial court found that "the Dover Project is a nonconforming use, and thus 'grandfathered.'" At the time of the trial court's decision, Rollinsford still had no density requirements.

In 2004, the petitioner sought approval in both Rollinsford and Dover for the construction of two additional buildings containing sixty-three apartment units in total (the Rollinsford Project). Both buildings would be located on the Rollinsford parcel, while sewer, utilities and road access would be provided through the Dover parcel.

The Dover building official denied approval for the Rollinsford Project for failure to comply with the Dover density requirements. The ZBA upheld the denial and the superior court, in turn, upheld the decision of the ZBA. The court first found that because the Rollinsford Project must use the Dover parcel for access, the petitioner may not elect to treat the two parcels as separate lots under RSA 674:53, I (Supp. 2007). The trial court then concluded:

> When viewing the Dover parcel and Rollinsford parcel as one contiguous lot, the additional apartment buildings substantially change and expand the current use of the land. This expansion

eliminates the Dover Project's non-conforming use, and requires the entire use of the lot to come into compliance with the Dover density requirement.

In response to the petitioner's motion to clarify, the court ruled that because "the petitioner's sole street access or sole maintained street access to the Rollinsford Project is located in Dover, Dover's regulations and ordinances, including density requirements, apply to the Rollinsford Project pursuant to RSA 674:53, II."

On appeal, the petitioner argues, *inter alia*, that the trial court erred in: (1) concluding that the Rollinsford Project must comply with Dover's density requirements; (2) concluding that the grandfathered Dover Project must come into compliance with Dover's subsequently-enacted density requirements; and (3) failing to conclude that Dover's scope of review regarding the Rollinsford Project is limited to the issue of access.

"Our review in zoning cases is limited. We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous. We review the superior court's interpretation of applicable statutes *de novo*." *Colla v. Town of Hanover*, 153 N.H. 206, 207 (2006) (citations omitted).

The petitioner argues that under the applicable statutes, "the subsequently enacted Dover Density Requirements are not applicable to the Dover Project and/or the Rollinsford Project, and that Dover is only permitted to review matters of access within Dover, as contemplated by the Rollinsford Project." As the petitioner's challenges are interrelated under the applicable statutory scheme, we examine them together. As they challenge the trial court's construction of RSA 674:53 (Supp. 2007), they raise issues of statutory interpretation.

"In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *In the Matter of Baker & Winkler*, 154 N.H. 186, 187 (2006). We first examine the statutory language, and "where possible, we ascribe the plain and ordinary meanings to words used." *Id.* We interpret statutes not in isolation, but in the context of the overall statutory scheme. *Id.*

RSA 674:53, I, provides:

I. An owner of contiguous land which is located in more than one municipality may treat a municipal boundary line as an existing boundary between lots, tracts, sites or other divisions of land for purposes of this title unless the existing or proposed use of land or arrangement of structures in one of the municipalities requires and is dependent upon land or improvements located in

the other municipality or municipalities in order to fulfill the land use ordinances or regulations of the first municipality with respect to such matters as lot size, density, frontage, uses or accessory uses, set-backs or access, or in order to comply with applicable state or federal regulations.

According to its plain language, this paragraph precludes an owner of contiguous land in adjoining municipalities from treating the municipal boundary as a lot boundary for planning and zoning purposes where, as here, the land in one municipality must be used to fulfill access requirements in the other municipality. Thus, we agree with the trial court that the petitioner is not eligible to make the election under RSA 674:53, I.

Paragraph I, however, does not specify any consequence of an ineligibility to make the election. The trial court, in a series of inferential steps explained in its two orders, concluded that because of the inability to treat the municipal boundary as a lot boundary under RSA 674:53, I: (1) the Dover and Rollinsford parcels must be treated as a single lot; (2) "the current use of that lot is the 120 unit apartment buildings substantially located in Dover"; (3) the Rollinsford Project constitutes a "substantial change and expansion" of that use; which (4) strips the Dover Project of its protected nonconforming use status; and (5) under the court's interpretation of RSA 674:53, "requires the entire use of the lot to come into compliance with the Dover density requirement." We conclude that although the trial court's analysis employs solid inferential logic, it is not supported by the plain meaning of the statutory language.

The petitioner contends that the trial court erred in finding an expansion of the non-conforming use in Dover, arguing: "As no improvements are being made to the Dover Project, . . . there is no expansion of a nonconforming use within Dover . . . ." The trial court granted the petitioner's requested finding of fact that "[t]he proposed Rollinsford Project would result in construction of the apartment units solely within Rollinsford." The pertinent question, then, is whether such construction, occurring solely within one municipality, may be considered an expansion of a nonconforming use on contiguous land solely within another municipality.

■ "A municipality's power to zone property . . . is delegated to it by the State, and the municipality must, therefore, exercise this power in conformance with the enabling legislation." *Britton v. Town of Chester*, 134 N.H. 434, 441 (1991). We accept as a general proposition that "[i]n the absence of any enabling legislation expressly providing otherwise, zoning enactments of a municipality are limited to its territorial boundaries and are invalid to the extent that they seek to impose zoning regulations and

restrictions on land outside city limits." *Roberson v. City of Montgomery*, 233 So. 2d 69, 70 (Ala. 1970). Nor, in general, may a city "restrict an owner's property rights in the city through a determination based upon property use outside the city limits." *S & C, Inc. v. City of Forest Park*, 338 S.E.2d 279, 281 (Ga. 1986).

As no other statute has been cited by the parties, we examine whether RSA 674:53 authorizes Dover to find an expansion of a nonconforming use in the city based upon construction outside the city limits. The respondent contends that the Dover and Rollinsford Projects are a "unitary development" because the petitioner cannot elect to treat the Dover and Rollinsford parcels as separate lots under RSA 674:53, I. It asserts that "[t]he existence of a unitary development eliminates the illusion that Dover density requirements are being applied solely to units proposed to be constructed in Rollinsford. . . . The addition of 63 units in the Town of Rollinsford is an extension of the development on the single lot." The implicit premise in this argument is that RSA 674:53, I, erases the municipal boundary line with respect to the use on the now-single lot. We find such a reading of RSA 674:53, I, inconsistent with the language of RSA 674:53 as a whole.

Paragraph III of the statute provides:

> III. An owner of contiguous land in more than one municipality may treat such contiguous land as a single lot, tract, site, or other division of land for purposes of this title, notwithstanding the municipal boundary line, provided that:
>
> (a) All uses of land, buildings, or structures shall comply with the regulations or ordinances of the municipality in which they are located.
>
> (b) When an owner has fulfilled or proposes to fulfill the requirements of one municipality, through the inclusion of land or improvements located in an adjoining municipality, such owner or the owner's successors shall not thereafter use that land or those improvements in a manner such that those requirements of the first municipality are no longer fulfilled. This paragraph may be enforced by the municipality whose requirements are to be fulfilled.

RSA 674:53, III.

■ The petitioner contends that subparagraph (b) addresses the situation in which a developer "borrows" land from one municipality to satisfy zoning requirements in an adjacent municipality. We agree. Subparagraph (b) provides that a developer may "borrow" land or

improvements lying within one municipality to fulfill the requirements of an adjoining municipality, provided that the developer may not subsequently use that land or those improvements in a manner inconsistent with the terms under which they were "borrowed." In other words, if, for example, a developer uses land in municipality A to meet open space requirements for purposes of an ordinance in municipality B, the developer could not later build on that land even though no regulation or ordinance of municipality B would otherwise prevent the construction. Thus, a developer may voluntarily subject land within a municipality to requirements in addition to the municipality's own ordinances by, in essence, "pledging" that land to meet the zoning or other requirements of a neighboring municipality. The only application of subparagraph (b) in this case is to restrict the petitioner from subsequently using the Dover parcel in a way that interferes with the access it "pledged" for the Rollinsford Project.

 Subparagraph (a) provides that even when contiguous land in more than one municipality is treated as a single lot, the uses of land, buildings and structures on that now-single lot must comply with the regulations or ordinances of the municipality in which they lie. We conclude that paragraph III as a whole evinces an intent to subject the uses, buildings and structures lying within a municipality solely to the regulations and ordinances of that municipality, except where land or improvements have been "borrowed" pursuant to subparagraph (b). Had the legislature intended that the uses and improvements on such a now-single lot be subject to the regulations and ordinances of all municipalities in which the single lot is located, it could easily have so provided. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Chase v. Ameriquest Mortgage Co.*, 155 N.H. 19, 22 (2007).

The trial court appears to have reached its contrary conclusion by reading RSA 674:53, III(b) in light of RSA 674:53, II. Our reading of paragraph II, however, does not alter our interpretation of the statute as a whole. Paragraph II provides:

> Upon receipt of an application for a permit or approval under this title for the subdivision, development, change of use of, or erection or alteration of any structure upon any lot, tract, site or other division of land whose boundary or portion thereof is a municipal boundary line, or whose sole street access or sole maintained street access is via a private road or class IV, V, or VI highway located in an adjoining municipality, the municipality receiving the application shall inquire in writing to the

appropriate administrative officials in the adjoining municipality or municipalities as to the existence of facts or regulations which, under paragraphs I, III, or IV of this section or otherwise, would preclude or affect such subdivision, development, construction, or change of use. Response shall be made to such inquiries within the period provided by this title for approval or disapproval of the underlying application. A response which invokes an ordinance or regulation of such adjoining municipality may be appealed in that adjoining municipality in the same manner as any other administrative decision. An adjoining municipality in which is located an existing private road or class VI highway that serves as an applicant's sole means of fulfilling the street access requirements under RSA 674:41 shall have the same regulatory powers under that statute *with respect to that road or highway* as if the proposed building or development were located within that same municipality.

RSA 674:53, II (emphasis added).

The trial court concluded that this paragraph made "Dover's regulations and ordinances, including density requirements, appl[icable] to the Rollinsford Project" because "the petitioner's sole street access or sole maintained street access to the Rollinsford Project is located in Dover." We disagree.

■ Paragraph II is a notice and enforcement provision. It requires a municipality receiving an application for a permit or approval on land adjoining another municipality to inquire of the second municipality whether there are any "facts or regulations which, under paragraphs I, III, or IV of this section or otherwise, would preclude or affect" the project for which the application was filed in the first municipality. *Id.* The paragraph acknowledges that the second municipality's response may invoke one of its regulations or ordinances and, in that case, provides that the response may be appealed in the second municipality "in the same manner as any other administrative decision." *Id.* We do not read this language to subject the project in the first municipality to all of the regulations or ordinances of the second municipality. Rather, read in light of the statute as a whole, the language envisions a situation such as the "borrowing" scenario previously discussed. Thus, for example, a municipality to which a developer has "lent" land for open space requirements in that municipality can object to the developer's later application, in the municipality in which the "borrowed" land lies, for approval to build on that land.

Our interpretation is bolstered by paragraph IV of the statute, which provides:

No plat or plan showing land or streets in more than one municipality in this state shall be deemed approved for purposes of this title unless it has been approved by the planning boards of all included municipalities in which the planning board has been granted authority over approval of that type of plat or plan. In addition, no plat or plan showing land whose sole street access or sole maintained street access is or is planned to be via a private road or class IV, V, or VI highway located in an adjoining municipality shall be deemed approved for purposes of this title unless it has been approved by the planning board, if any, of that adjoining municipality, *provided however that the sole issue which may be addressed or regulated by the adjoining municipality shall be the adequacy of such street access, and the impact of the proposal upon it.*

RSA 674:53, IV (emphasis added).

The emphasized language clearly limits the adjoining municipality's review to access-related issues. An owner of "land whose sole street access or sole maintained street access is or is planned to be via a private road or class IV, V, or VI highway located in an adjoining municipality," *id.*, would, if he also owned the land through which access was contemplated, be precluded from making the election in RSA 674:53, I, to treat the parcels as separate lots. If RSA 674:53, I, were interpreted, as the respondent advocates, to erase the municipal boundary line and subject all of the contiguous land to the ordinances and regulations of the adjoining municipality, it would nullify the emphasized language in paragraph IV. We reject such an interpretation because we read a statute so "as to give every part its due weight. Every statute should be so construed that it may have a reasonable effect, agreeably to the intent of the legislature, and, if possible, so that no clause, sentence or word, shall be superfluous, void or insignificant." *State v. Wilton Railroad*, 89 N.H. 59, 61 (1937) (quotations and citation omitted).

To similar effect is paragraph VI of the statute, which provides that an applicant may petition for joint review "[w]hen local land use boards from more than one municipality have jurisdiction over a proposed use, subdivision, or development of property." RSA 674:53, VI. Subparagraph (b) provides in part, that "[e]ach land use board shall be responsible for rendering a decision on the subject matter within its jurisdiction." We construe this language to mean, consistently with RSA 674:53, III, that each municipality is responsible for determining whether the uses of land,

buildings, or structures located in that municipality, or "lent" to that municipality to fulfill its requirements, comply with its regulations or ordinances. We note that the trial court appears to have similarly construed this paragraph, as it granted the petitioner's requested ruling of law that "RSA 674:53 confers jurisdiction to each municipality for the improvements therein. *See* RSA 674:53, VI."

■ The respondent urges an alternative construction: "Read as a whole, RSA 674:53 provides for full compliance with the regulations of all involved municipalities with the exception of the situations where the impact upon a municipality is only access." We believe such a statutory scheme would be unworkable, as it is not difficult to imagine a situation in which the regulations of adjoining municipalities could irreconcilably conflict. In addition, the respondent's proposed construction would allow the neighboring municipality to prevent or otherwise regulate the entire project in the first municipality no matter how slight the overlap into the neighboring municipality. Because we presume that the legislature would not pass an act leading to an absurd result, *Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511-12 (2006), we reject the respondent's construction.

The remaining provisions of RSA 674:53: (1) prohibit disapproval of an application solely because the lot straddles a municipal boundary or proposes the "borrowing" of land or improvements in an adjoining municipality, RSA 674:53, V(a); (2) allow a planning board to waive or vary its road access regulations, RSA 674:53, V(b); and (3) grant abutter status to an adjoining municipality through or by which the only maintained public class I and II highway access for the proposed project is provided, RSA 674:53, VII. Nothing in these remaining provisions alters our interpretation of RSA 674:53 as a whole. Accordingly, we reverse the trial court's decision and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.