NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court - Derry Family Division
No. 2015-0253

IN THE MATTER OF DEBORAH MUNSON AND CORALEE BEAL

Argued: May 5, 2016
Opinion Issued: August 19, 2016

Crusco Law Office, PLLC, of Bedford (Kysa M. Crusco on the brief and orally), for the petitioner.

Shaheen & Gordon, P.A., of Manchester and Saco, Maine (Paul R. Kfoury, Sr., Andrea Q. Labonte, and Courtney Michalec Hart on the brief, and Mr. Kfoury orally), for the respondent.

American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette on the brief), and Gay & Lesbian Advocates & Defenders, of Boston, Massachusetts (Mary L. Bonauto on the brief), for American Civil Liberties Union of New Hampshire and Gay & Lesbian Advocates & Defenders, as amici curiae.

HICKS, J. The respondent, Coralee Beal, appeals a divorce decree of the Circuit Court (Sadler, J.) awarding the petitioner, Deborah Munson, what Beal represents to be eighty-eight percent of the value of the marital estate. The

court awarded Beal the remaining twelve percent and alimony.[*]  Munson filed a cross-appeal, but later withdrew it.  Beal argues that the court erred by failing to consider the parties' approximately fifteen-year period of premarital cohabitation when it determined the provisions of the decree.  We hold that the trial court may consider premarital cohabitation when formulating an equitable distribution of marital property.  See RSA 458:16-a, II (2004).  Accordingly, we vacate both the property distribution and alimony award and remand for further proceedings.

The trial court found, or the record supports, the following facts.  Munson and Beal met in 1992.  The following year, they began living together in Munson's home in Chester.  Approximately fifteen years later, on October 8, 2008, the parties entered into a civil union, and, on January 1, 2011, their civil union converted to a marriage by operation of law.  See RSA 457:46, II (Supp. 2015).  On March 28, 2012, Munson filed a petition for divorce.

At trial, Munson took the position that the parties' marriage was a short-term marriage.  Beal challenged that position in her trial memorandum:

> Prior to the legalization of gay marriage, [Beal] and [Munson] did what the law allowed them to do as any other married couple to provide for the other, including, but not limited to executing estate plans that left respective estates to the other, [Munson] providing life and health insurance for her partner's benefit, having joint accounts, commingling bank and credit card accounts, sharing duties within the home and finally joining together in a civil union and legal marriage.

Beal argued that "[t]he Court must consider the parties['] lengthy twenty-one year relationship . . . when ordering [a] . . . distribution of the marital property in this matter."  (Underlining and bolding omitted.)

The trial court granted the parties a divorce based upon irreconcilable differences.  In its decree, the court made extensive findings of fact concerning the parties' premarital relationship; however, it determined that "the effect of the civil union between [the parties] on October 8, 2008 started their marriage and the issues in their divorce will be determined using that as the start date."  (Bolding omitted.)  It then found that the parties' marriage was "short-term" and concluded that "this is a special circumstance wherein distribution of the assets is not equal."  Based upon these findings, the court ordered the distribution of approximately twelve percent of the marital estate to Beal and that Munson pay $500 per month in alimony to Beal for a term of five years.

---

[*] For purposes of this appeal, we accept Beal's percentages as accurate.  When asked about the percentages at oral argument, Munson's counsel stated that, although she had not verified them herself, she did not dispute their accuracy.

On appeal, Beal challenges the trial court's division of the marital property as well as the amount of the alimony award. "We afford trial courts broad discretion in determining matters of property distribution, alimony and child support in fashioning a final divorce decree." In the Matter of Crowe & Crowe, 148 N.H. 218, 221 (2002). "We will not overturn a trial court's decision on these matters absent an unsustainable exercise of discretion or an error of law." In the Matter of Costa & Costa, 156 N.H. 323, 326 (2007) (citation omitted).

We first address the trial court's division of the marital property. Under RSA 458:16-a, the marital estate includes "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a (2004) (emphasis added). "The statute does not classify property based upon when or by whom it was acquired, but rather assumes that all property is susceptible to division." In the Matter of Crowe & Crowe, 148 N.H. at 221.

RSA 458:16-a, II grants the trial court the authority to equitably divide the marital estate: "When a dissolution of a marriage is decreed, the [trial] court may order an equitable division of property between the parties." RSA 458:16-a, II. The statute requires the court to "presume that an equal division is an equitable distribution of property." Id. We have interpreted the statute to require that, "[a]bsent special circumstances, the court must make the distribution as equal as possible." In the Matter of Sarvela & Sarvela, 154 N.H. 426, 430 (2006).

However, RSA 458:16-a, II also permits the court to find "that an equal division would not be appropriate or equitable after considering one or more of" fifteen enumerated factors. RSA 458:16-a, II. The factors include "the length of the marriage, the ability of the parties to provide for their own needs, the needs of [a] custodial parent, the contribution of each party during the marriage and the value of property contributed by each party." In the Matter of Sarvela & Sarvela, 154 N.H. at 430 (quotation omitted); see RSA 458:16-a, II(a)-(o). The statute also permits the court to "consider any other factor it deems relevant in equitably distributing the parties' assets." In the Matter of Sarvela & Sarvela, 154 N.H. at 431; see RSA 458:16-a, II(o).

In discussing the length of the marriage, we have noted that "[a] marriage of only one or two years may be considered differently than a long-term marriage of ten, twenty, or thirty years." In the Matter of Sarvela & Sarvela, 154 N.H. at 431 (quotation omitted). We have observed that, "[i]n a short-term marriage, it is easier to give back property brought to the marriage and still leave the parties in no worse position than they were in prior to it." Id. (quotation omitted). However, we have explained that "[t]he duration of a marriage is but one of the factors for a court to consider when equitably dividing the parties' property," and that it may not always be equitable "to treat

3

a short-term marriage differently from a long-term marriage." In the Matter of Hampers & Hampers, 154 N.H. 275, 286 (2006). We have also emphasized the general principle that, "[i]n a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed 'just' based upon the evidence presented and the equities of the case." In the Matter of Sarvela & Sarvela, 154 N.H. at 431 (quotation omitted).

Here, the trial court focused its analysis almost entirely upon the duration of the parties' marriage. See RSA 458:16-a, II(a). The court acknowledged Beal's arguments about the parties' lengthy period of premarital cohabitation, but ruled that the "issues in [the parties'] divorce will be determined using" the date when the parties entered into a civil union, October 8, 2008, "as the start date." (Bolding omitted.) Based upon that "start date," the court concluded that the parties' marriage was "a short-term marriage," and ordered an unequal distribution of the marital property. (Bolding omitted.) The court also noted that it "decline[d] [Beal's] invitation to declare the parties married upon their cohabitation in the 1990s." Thus, it appears that the court did not consider the parties' period of premarital cohabitation when it divided their marital estate.

Beal argues that the "parties' lengthy cohabitation and commingling of assets, along with all the many legal steps they took to solidify their commitment . . . compel a finding that their relationship was in effect a long-term marriage." Alternatively, she argues that, "at a minimum, the [trial] court should have applied equitable principles to consider the commingling of assets before 2008." She asserts that, by focusing "primarily on one . . . factor[], the length of the parties' legal marriage, . . . the [trial] court ignored the substantial and uncontroverted evidence developed at trial that the parties had a committed romantic and financial partnership long before 2008."

Munson counters that "[t]here is no need to fashion a new rule as [Beal] urges that would label periods of cohabitation as a marriage because the trial court already has the discretion to consider it." According to her, the "court weighed the parties' testimony and evidence, the statutory factors, and each parties' [sic] financial situation[] before constructing an equitable division of the property." She argues that, "[b]ased on the totality of the circumstances, including the parties' lengthy cohabitation, the trial court reasonably concluded that each party should keep [her] own assets and debts except for a portion . . . of . . . [Munson's] retirement accounts and pension to be transferred to [Beal]."

The parties appear to agree that, under RSA 458:16-a, II, premarital cohabitation is a permissible factor for the court to consider when dividing marital property. Their principal disagreement concerns whether the trial court erred in not doing so.

4

We have twice found it unnecessary to decide whether the trial court may consider premarital cohabitation under RSA 458:16-a, II.  In Hoffman v. Hoffman, 143 N.H. 514 (1999), the trial court took into account the parties' five-year cohabitation period along with their twelve-year marriage, concluded that the parties' relationship was long-term, and awarded the plaintiff, among other things, nearly half of the marital estate.  Hoffman, 143 N.H. at 516, 522.  We declined to decide whether the trial court erred by "tack[ing] the five-year cohabitation period onto the twelve-year marriage period" because, we concluded, "[e]ven without considering the five-year premarital relationship, the court could have regarded the [parties'] twelve-year marriage as long-term."  Id. at 522.  In In the Matter of Crowe and Crowe, we decided against "fashion[ing] a specific rule regarding premarital cohabitation as it relates to the division of property."  In the Matter of Crowe & Crowe, 148 N.H. at 222.  We rejected the petitioner's argument that the trial court "erroneously subsumed the period of premarital cohabitation into the duration of the marriage and treated as marital assets property acquired during that time period," id. at 221, because, we observed, "RSA 458:16-a, I, makes no distinction between property brought to the marriage by the parties and that acquired during marriage; thus, all property owned by each spouse, regardless of the source, may be included in the marital estate," id. at 222.

Courts in several other jurisdictions, however, have held that premarital cohabitation is a factor that the trial court may consider when dividing marital property or awarding alimony.  For instance, in reviewing an alimony award under a statute containing language similar to that in RSA 458:16-a, the Court of Appeals of Oregon noted:

> Although we agree with husband that the statute plainly refers to "duration of the marriage" as one factor that the court may consider in determining an award of spousal maintenance, we note that the statute's final subsection gives the court broad discretion to consider other factors that "the court deems just and equitable."

Lind and Lind, 139 P.3d 1032, 1040 (Or. Ct. App. 2006).  The court could "see no reason why that discretion necessarily excludes considering the length of the parties' premarital cohabitation."  Id.  Moreover, addressing a factual scenario that was similar to the one in this case, the Court of Appeals of Michigan rejected the defendant's argument "that he and [the] plaintiff had a short-term marriage," and held that the trial court did not err in its consideration of "all of the factors which [were] relevant to the equitable division of the parties' property," including a fifteen-year period of premarital cohabitation.  Nielsen v. Nielsen, 446 N.W.2d 356, 357 (Mich. Ct. App. 1989).  Several other courts have reached similar conclusions.  See, e.g., Chen v. Hoeflinger, 279 P.3d 11, 25 (Haw. Ct. App. 2012) ("In this case, it does not contravene a just and equitable division of property to consider the parties' premarital cohabitation, even though one of the parties might have been legally

married to someone else at that time."); Bertholet v. Bertholet, 725 N.E.2d 487, 495 (Ind. Ct. App. 2000) ("[A] trial court may consider periods of cohabitation followed by marriage in determining a proper distribution of the marital estate." (quotation omitted)); In re Marriage of Clark, 71 P.3d 1228, 1231 (Mont. 2003) ("[I]t would be inequitable to disregard [the parties'] premarital cohabitation when considering [the wife's] contributions to the marital estate.").

We have identified only one court — the Connecticut Supreme Court — that has declined to permit the trial court to consider premarital cohabitation. In Loughlin v. Loughlin, 910 A.2d 963 (Conn. 2006), the court concluded that "consideration of a period of cohabitation that precedes a marriage as part of the statutory factor of 'length of the marriage' in a dissolution action is improper" because Connecticut "draw[s] a clear distinction between marriage and cohabitation, and . . . award[s] greater rights and protections to persons who make the formal legal commitment of marriage." Loughlin, 910 A.2d at 972, 973. However, the court acknowledged that "events that occur during a period of cohabitation" may "indirectly bear[] on other statutory criteria, such as the health, station, occupation, amount and sources of income, vocational skills . . . [and] employability." Id. at 972-73 (quotation omitted).

The Loughlin court was interpreting a statutory provision similar to RSA 458:16-a, II(a). Consistent with Loughlin's reasoning, we conclude that the "duration of the marriage," RSA 458:16–a, II(a), plainly refers to the period during which the parties were married, which, as a matter of law, does not include premarital cohabitation. See Loughlin, 910 A.2d at 973. Accordingly, we reject Beal's assertion that the "parties' lengthy cohabitation and commingling of assets . . . compel a finding that their relationship was in effect a long-term marriage."

However, we note that, like the statute analyzed in Lind, RSA 458:16, II permits the trial court to consider, apart from the enumerated factors, "[a]ny other factor that [it] deems relevant." RSA 458:16-a, II(o); see Lind, 139 P.3d at 1040. And, as both the Lind and Loughlin courts recognized, premarital cohabitation may be relevant to the distribution of marital property. For instance, a couple living together may commingle their finances or jointly acquire property in anticipation of marriage. Their marriage may not occur for several years, and after it occurs, it may be short in duration. Still, the couple may have become dependent upon the assets that they shared prior to marriage, such that it may not be just for a court in divorce proceedings to ignore their cohabitation period when determining what constitutes an equitable property division. As the amici explain, when a divorcing couple's relationship has included "years of economically interdependent cohabitation followed by a 'short' marriage, the notion of returning the parties to their original pre-marital position is unrealistic" because "the relationship was not, in any relevant way, short-term." See Nielsen, 446 N.W.2d at 357.

6

Thus, we see no reason why RSA 458:16-a, II(o), which broadly permits the trial court to consider "[a]ny other factor that [it] deems relevant," would not permit the court to consider premarital cohabitation. We therefore hold that premarital cohabitation is a factor that the court may consider in divorce proceedings when determining whether to depart from the presumption that "an equal division is an equitable distribution of property." RSA 458:16-a.

Here, the trial court found that, prior to entering into a civil union, the parties had lived together since 1993; "shared a joint account into which most of [their] funds were deposited and out of which the bills were paid"; "obtained personal property, decorated the home and acquired additional debt"; and filed with Munson's employer two "Affidavit[s] of Life Partnership . . . to establish their rights as a couple"; among other things. However, the court apparently ignored these findings when it decided to depart from the statutory presumption, which suggests that it believed that it had no discretion to consider them. Although, until now, we have not expressly held that premarital cohabitation may be considered a factor under RSA 458:16-a, II, we conclude that, by not taking these findings into account, the court did not exercise the full breadth of its discretion under the statute.

The "[f]ailure to exercise discretion constitutes an [unsustainable exercise] of discretion." DeButts v. LaRoche, 142 N.H. 845, 847 (1998); see State v. Lambert, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion"). Having concluded that the court has the discretion to consider premarital cohabitation under RSA 458:16-a, II, we hold that the court's failure to do so in this case rendered its division of the parties' marital property unsustainable. Accordingly, we vacate that portion of the court's decree.

We now turn to the court's alimony award. RSA 458:19 grants the trial court the authority to "make orders for the payment of alimony to the party in need of alimony, either temporary or permanent, for a definite or indefinite period of time." RSA 458:19, I (Supp. 2015). When "determining the amount of alimony," the court must consider all of the factors that the statute enumerates. RSA 458:19, IV(b); see In the Matter of Crowe & Crowe, 148 N.H. at 225 (listing the statutory factors that the trial court "must consider" (emphasis added)). One of those factors is "the property awarded under RSA 458:16-a." RSA 458:19, IV(b). We conclude that the court's division of the marital property under RSA 458:16-a was unsustainable; thus, the court could not have adequately considered it in determining the amount of alimony under RSA 458:19, IV(b). We therefore vacate the court's alimony award.

Munson argues that, because "[s]ame-sex civil unions and marriage were available to [her] and [Beal] in neighboring states long before New Hampshire enacted civil unions," the "notion that [she] and [Beal] would have married long before they did if they were able to is a fallacy." Accordingly, Munson

7

concludes, "[Beal's] reliance on the argument that civil union and/or marriage [were] not available . . . prior to 2008 is misplaced."

Whether Munson and Beal could have entered into a civil union or married earlier does not affect our analysis. Had they done so, their period of premarital cohabitation would have been shorter, but, for the reasons previously discussed, it would have still remained a relevant factor in the determination of an equitable property division. We further note that premarital cohabitation is not unique to same-sex couples. See Pew Research Ctr., The Decline of Marriage and Rise of New Families 66 (2010), http://www.pewsocialtrends.org/files/2010/11/pew-social-trends-2010-families.pdf ("Since 1990, when the Census Bureau first allowed people to designate themselves on the census form as 'unmarried partners,' the number of cohabiting adults has nearly doubled. In 2008, 6.2 million households were headed by people in cohabiting relationships . . . . They included 565,000 same-sex couples."). Our holding that the court may consider premarital cohabitation applies to all divorce proceedings.

Munson also states that "the New Hampshire Constitution prohibits the retroactive enforcement of laws that affect substantive rights or impose new duties or obligations," and argues that "[t]here is no reason to implement a retroactive marital status because the trial court had the discretion to consider the cohabitation and the status of the law regarding same-sex marriage." We find this argument unavailing. Here, we interpret the property settlement statute to allow the trial court to consider premarital cohabitation as a factor separate from the duration of the marriage. We do not, as Munson argues, "implement a retroactive marital status" that adds the period of premarital cohabitation to the length of the parties' legal marriage.

We remand for further proceedings consistent with this opinion.

Vacated and remanded.

DALIANIS, C.J., and CONBOY and BASSETT, JJ., concurred.

8