NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

9th Circuit Court-Merrimack Family Division
No. 2021-0373

IN THE MATTER OF BRIAN COLSIA AND ALLANA KELLEY-COLSIA

Submitted: February 10, 2022
Opinion Issued: April 6, 2022

Brian Colsia, the petitioner, filed no brief.

Nadeau Legal PLLC, of Biddeford, Maine (Robert M. Nadeau on the brief), for the respondent.

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Roy W. Tilsley, Jr. and Hilary H. Rheaume on the brief), for intervenor Wayne Colsia.

North Atlantic Legal, PLLC, of Portsmouth (Jonathan T. McPhee on the brief), for intervenors Faith Deeter-Macomber and Foxtrot Delta, Inc.

Ford, McDonald, McPartlin & Borden, P.A., of Portsmouth (Marc W. McDonald on the brief), for the receiver.

Danielle Colsia, self-represented party, filed no brief.

MACDONALD, C.J. This interlocutory appeal is from an order of the Circuit Court (Derby, J.) granting the motions to approve settlements filed by the receiver, Attorney Edmond J. Ford (receiver). See Sup. Ct. R. 8. We affirm and remand.

The following facts are supported by the record. This divorce proceeding was initiated in March 2015 by Brian Colsia (husband) against his wife, Allana Kelley-Colsia (wife). Shortly before and during the divorce, the husband took several actions to hide marital assets from the wife and the court and/or make discovery and recovery of the assets so difficult and costly that the wife would settle for less than that to which she was entitled.

At the wife's request, in February 2020, the court appointed the receiver to recover property that had been removed from the marital estate. In its appointment order, the court identified the scope of the receivership as including ten "real properties and any and all proceeds thereof, which shall include any and all inchoate, equitable and/or residual rights, such as the right to bring suit to set aside fraudulent transfers or otherwise recover property that has been improperly removed from the marital estate." In addition, the receivership encompassed two LLC entities and "any and all real estate owned thereby, which shall include any and all residual rights" including "the right to bring suit to set aside a fraudulent transfer or otherwise recover property that has been improperly removed from the marital estate." The receiver was authorized to "take full title to and control of all assets, accounts and credits of" the LLCs, "to arrange for the liquidation of all such assets in a commercially reasonable manner forthwith," and "to initiate and prosecute such actions and to defend against such actions, as the receiver may deem reasonable to recover and protect the assets of those entities, and, in effect, the assets of the marital estate."

In May 2020, the court granted the receiver's motion for leave to file a petition in superior court to challenge the validity of mortgages granted to Wayne Colsia, the husband's brother. The circuit court ordered that "[t]he receiver shall exercise his discretion in prosecuting the case and negotiating a resolution" and "shall seek [circuit] court approval prior to finalizing any settlement that does not have the assent of" the husband and wife. Thereafter, the receiver negotiated a resolution with Wayne and, in October 2020, moved for the court to authorize and approve the settlement. The resolution released or discharged "all of Wayne Colsia's mortgages or claims (in the face amount of $2,000,000.00) against receivership assets in exchange for the sum of $300,000.00," the effect of which "after taxes, and receivership expenses" made available to the court "for immediate division between the spouses approximately $2,000,000.00 in cash."

In support of the settlement, the receiver's motion set forth: (1) a "first order analysis" of the range of possible financial outcomes of litigating the fraud claim against Wayne; (2) a "second order analysis" of the time value of money; and (3) a "third order analysis" of the risk of losing the litigation against Wayne. Based on these analyses, the receiver concluded that "settlement on the terms proposed [was] in the best interests of the marital estate." The receiver explained that the resolution minimized litigation expense, avoided the risk of administrative insolvency, and allowed the court to do justice by imposing the burden of the expenses incurred in resolving the litigation on the husband in the final allocation of the marital assets.

In addition, in January 2021, the receiver moved for approval of a settlement agreement with Foxtrot Delta, LLC (Foxtrot), which held two notes secured by two mortgages on one of the properties listed in the receivership order. The receiver's motion explained that the settlement agreement proposed to resolve what amounted to bona fide debt of the marital estate under terms that minimized "interest expense" and "attorney's fees and expenses for which the Receivership Estate" was liable, and achieved "a reasonably just result." The wife objected to both proposed settlements.

Following hearings on the motions, the circuit court approved the settlements. Regarding the Wayne settlement, the court reasoned that the receiver had "presented a realistic proposal that will make a significant amount of unencumbered money available for distribution" and "will also have no adverse effect on [the wife's] right to ask [the circuit court] for a property division that favors her and disfavors [the husband] because of [his] fraudulent conduct." The court noted that, although it had pressed the wife's counsel for an "alternative scenario or legal theory that . . . would produce a better outcome than the outcome presented by the receiver," none was presented. Rather, the wife maintained her position that the family division lacked jurisdiction to settle the dispute with Wayne and that she "'want[ed] her day in [superior] court.'"

The court concluded that the wife

> ha[d] not shown that continuing all of the Superior Court litigation
> will make more money available for equitable division than the
> amount she could ask to be awarded out of [the husband's] share
> because of what it took to free the marital assets from the
> questionable mortgage that [the husband] gave Wayne.

Likewise, regarding the Foxtrot settlement, the court concluded that the receiver "met his burden of proof in demonstrating that a settlement now and in the amount proposed is in the best interests of the marital estate" and the wife "ha[d] not provided the court with any specific realistic alternative path to a better resolution."

3

The circuit court subsequently granted the wife's request for a stay of the effectuation of the settlements pending appeal, and approved the transfer of the following questions, proposed by the wife, for our consideration:

> 1.  Does a divorce court that has appointed a receiver for the marital estate [have] the authority to approve a settlement with third parties and intervenors where in one instance since long prior to the receiver's appointment the spouse objecting to one of the settlements had been litigating, and remains in litigation in the superior court regarding, the validity of two mortgages affecting the marital estate and a related question occasioned by alleged civil conspiracy-related fraud associated with those mortgages, and where in the other instance the ostensible intervenor has not at any time filed an action in the superior court to determine the validity of two other mortgages affecting the estate?
>
> 2.  Do third-party mortgagees possess standing to intervene in a divorce proceeding, to assert and advocate for approval of the receiver's settlement of litigation pending in another forum regarding the validity and enforceability of the mortgages against the marital estate?
>
> 3.  Does a receiver appointed by a divorce court have authority to negotiate and approve a settlement with third parties and intervenors regarding the aforesaid mortgages over the objections of a spouse and without review and approval by the superior court, under the foregoing circumstances?
>
> 4.  Did the divorce court err in approving the settlements over a spouse's objections?
>
> 5.  Can a party that moved to have a receiver appointed with broad settlement powers and failed to challenge the Marital Court's issuance of an order providing the receiver with such settlement powers subsequently challenge the receiver's ability to exercise such settlement powers?

For the following reasons, we answer the first three questions in the affirmative and the fourth question in the negative. In light of those answers that address the wife's specific challenges, we assume without deciding for purposes of this interlocutory appeal that, notwithstanding the fact that the wife moved to appoint a receiver with broad settlement powers and failed to challenge the circuit court's appointment order, she could challenge the receiver's exercise of his settlement powers.

Regarding the first question, the wife asserts that the circuit court lacked authority to approve the Wayne and Foxtrot settlements because the superior court has "exclusive authority to determine the validity of mortgages." The wife also asserts that there is "no language" in the appointment order "that conferred any authority upon [the receiver] to compromise and settle claims against the marital estate" or to "usurp" the wife's superior court litigation against Wayne regarding the validity of the mortgages transferred to him from the husband.

The receiver counters that the circuit court, having the powers of a court of equity, may appoint a receiver in a divorce proceeding to protect the assets of the marital estate which, in this case, include: (1) the real estate properties owned and hidden by the husband; (2) the wife's right to recover the real estate properties because they were fraudulently transferred; and (3) the wife's claims for damages against Wayne for wrongs done. In addition, the receiver asserts that the circuit court's orders clearly authorized the receiver to bring litigation and negotiate resolutions to recover marital property.

The circuit court exercises exclusive jurisdiction over petitions for divorce. See RSA 490-D:2, I (2010); RSA 490-F:18 (Supp. 2021) (references in statutes to the judicial branch family division shall be deemed to be to the circuit court where it has exclusive subject matter jurisdiction). When subject matter jurisdiction lies with the circuit court, it "shall have the powers of a court of equity." RSA 490-D:3 (2010). Thus, the circuit court has broad and flexible equitable powers that allow it to shape and adjust the precise relief to the requirements of a particular situation. See Chase v. Ameriquest Mortgage Co., 155 N.H. 19, 24 (2007). The propriety of awarding equitable relief rests in the sound discretion of the trial court, to be exercised according to the circumstances and exigencies of the case. Id. We will not overturn the circuit court's equitable decision absent an unsustainable exercise of discretion. See In the Matter of Costa & Costa, 156 N.H. 323, 326 (2007).

Pursuant to its equity powers under RSA 490-D:3, the circuit court's jurisdiction over a divorce necessarily includes authority to appoint a receiver to protect the assets of the marital estate. In the Matter of O'Neil & O'Neil, 159 N.H. 615, 624 (2010); see Eastman v. Bank, 58 N.H. 421, 422 (1878) (explaining that the appointment of a receiver "is a matter resting in the sound discretion of the court, and when appointed he is virtually an officer of the court and subject to [its] orders"). The assets of the marital estate include all tangible or intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a, I (2018).

To the extent the wife asserts that the circuit court erred in approving the settlements because it lacks the authority to determine the validity of mortgages, this argument misconstrues the court's order. The court expressly

5

stated that, by approving the settlements, it was "not ruling or making any kind of finding on the actual merits of the fraud or priority claims as they relate to Wayne." Rather, in determining the best interests of the marital estate, the court was "evaluating whether the receiver's proposed settlement falls within the realm of reasonableness for a settlement, given the costs, delay and risks of litigation."

Likewise, we reject the wife's argument that the appointment order contains "no language" conferring authority on the receiver to "hijack" the wife's litigation in superior court against Wayne or to "settle claims against the marital properties" over her objections. The appointment order expressly provided that the receivership encompassed "any and all inchoate, equitable and/or residual rights, such as the right to bring suit to set aside fraudulent transfers or otherwise recover property that had been improperly removed from the marital estate" and the authority to "initiate and prosecute such actions and to defend against such actions, as the receiver may deem reasonable to recover and protect the . . . assets of the marital estate." Further, the court's order granting the receiver's motion to file suit against Wayne in superior court to challenge the validity of mortgages granted to him expressly authorized the receiver to "exercise his discretion in prosecuting the case and negotiating a resolution." Accordingly, we conclude that the circuit court had authority to approve the settlements proposed by the receiver to recover marital property.

The second transferred question asks whether "third-party mortgagees" possess standing to intervene in a divorce proceeding, i.e., Wayne and Foxtrot. Rules governing the circuit court provide that "[a]ny person asserting an interest in the proceedings may seek to intervene as a party in the action by filing a motion to intervene." Fam. Div. R. 2.7(A); see Snyder v. N.H. Savings Bank, 134 N.H. 32, 35 (1991) (explaining that a trial court has discretion to grant intervenor status when the intervenor has a "right involved in the trial and his interest [is] direct and apparent" (emphases and quotation omitted)). Reasoning that "Wayne's interest in approval of the settlement is sufficiently direct and apparent to warrant limited intervention on that issue at the trial court level," the court granted him status as an intervenor "for the purpose of defending the receiver's settlement." Likewise, Foxtrot was "granted the same limited intervenor status" in the circuit court.

The wife argues that granting intervenor status to Wayne and Foxtrot "effectively turn[ed] the marital dissolution proceeding into a creditor's proceeding." In doing so, she incorrectly contends that Wayne and Foxtrot were granted intervenor status "to permit them to litigate and be heard regarding their alleged rights of payment and of any rights of compromise associated with their asserted mortgages" which, she asserts, is solely within the superior court's jurisdiction. However, the court's grant of intervenor status was expressly limited to defending the proposed settlements, not to litigating the validity of the mortgages. We agree with the receiver that the

circuit court did not unsustainably exercise its discretion by allowing the intervenors "to provide insight into the appropriateness of the receiver's business judgment." Accordingly, we conclude that the circuit court sustainably exercised its discretion in granting limited intervenor status to Wayne and Foxtrot.

The third question asks whether the receiver had authority to negotiate and approve the Wayne and Foxtrot settlements over the wife's objection and without the superior court's approval. The wife, repeating her arguments above in response to the first question, argues that, by approving the settlement agreements, the circuit court "usurp[ed]" her efforts in superior court to litigate the validity of the husband's mortgages granted to Wayne and "the authority of the superior court itself." As the circuit court explained, however, the wife's interest in the assets subject to the receivership arose solely from the court's statutory power under RSA 458:16-a to equitably divide assets between divorcing spouses. "To the extent that [the wife] has been granted standing to participate in various Superior Court actions because she is an attaching creditor," the court reasoned, "she is only an attaching creditor because [it] granted her a pre-judgment attachment to secure her right to equitable division [of] marital property." Thus, the court determined, it was "unable to find and articulate <u>any</u> standing in [the superior court] that [the wife] would have separate and apart from her interest in an equitable division of marital property by [the circuit court] in this divorce proceeding." In the absence of any legal authority presented by the wife to the contrary, we agree with the court that both the creation of a receivership at her urging and the court's approval of "a settlement of all the claims stemming from Wayne's mortgage" were within the court's equitable jurisdiction.

The fourth question asks whether the circuit court erred in approving the settlements proposed by the receiver. We will uphold the circuit court's decision unless it is unsupported by the evidence or plainly erroneous as a matter of law. See In re Estate of Locke, 148 N.H. 754, 755 (2002).

In reaching its decision, the court characterized the receiver's proposed settlement with Wayne as a "'litigation costs' settlement proposal, with an adjustment for the small risk of an unfavorable outcome and the time value of money," and found that there was no evidence that further litigation would produce a better result. The court concluded that, "without a clear alternative litigation strategy and a plan for a more advantageous resolution and collection," rejecting the proposed settlement "seem[ed] likely to deplete the marital estate for both parties and further prolong this divorce." In addition, the court determined that "the receiver ha[d] presented a realistic proposal that [would] make a significant amount of unencumbered money available for distribution. Approving the settlement will also have no adverse effect on [the wife's] right to ask [the] court for a property division that favors her and disfavors [the husband] because of [the husband's] fraudulent conduct."

7

Likewise, the court found the proposed settlement with Foxtrot was in the best interests of the marital estate, determining that the receiver had "met his burden of proof in demonstrating that a settlement now and in the amount proposed is in the best interests of the marital estate" and that the wife "ha[d] not provided the court with any specific realistic path to a better resolution." Our review of the evidence supports the circuit court's findings. The wife does not challenge the receiver's analysis or put forth any argument that the court's determinations were erroneous. Given that the court's decision to grant the motions to approve the settlements is supported by the record and is not plainly erroneous as a matter of law, we find no error.

Affirmed and remanded.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.